# EXHIBIT A

**EXHIBIT A**

1  **WANG HARTMANN GIBBS & CAULEY, PLC**
   Richard F. Cauley (SBN: 109194)
2  RichardCauley@whgclaw.com
   1301 Dove Street, Suite 1050
3  Newport Beach, California 92660
   Telephone: (949) 833-8483
4  Facsimile: (949) 833-2281

5  Attorneys for Plaintiff
   WANG HARTMANN GIBBS & CAULEY, PLC

6

7

8                    **UNITED STATES DISTRICT COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

10

11 | WANG HARTMANN GIBBS & | Case No.: SACV10-1499-JVS (MLGX) |
   | CAULEY, PLC, a Corporation, | |

12 | | |
   | Plaintiff, | **FIRST AMENDED COMPLAINT** |
13 | | **FOR:** |

14 | vs. | |

15 | | **1. FEDERAL TRADEMARK** |
   | | **INFRINGEMENT UNDER THE** |
16 | JASON BRIAN WITTEN, an | **LANHAM ACT** |
   | individual; and WANG, | **2. BREACH OF FIDUCIARY** |
17 | HARTMANN, GIBBS & CAULEY | **DUTY** |
   | LTD., a United Kingdom Private | **3. FRAUD** |
18 | Limited Company. | **4. CONVERSION/** |
   | | **EMBEZZLEMENT** |
19 | | **5. UNFAIR BUSINESS** |
20 | Defendants. | **PRACTICES** |
   | | **6. DECLARATORY RELIEF** |
21

22                                      **DEMAND FOR JURY TRIAL**

23

24

25

26    Plaintiff, WANG, HARTMANN, GIBBS & CAULEY, PLC, a California

27 corporation, by and through its attorneys of record, alleges as follows:

28

                                    1
        ─────────────────────────────────────────
                    FIRST AMENDED COMPLAINT

**PARTIES**

1.     Plaintiff, WANG, HARTMANN, GIBBS & CAULEY, PLC ("WHGC") is and at all times herein mentioned, a corporation organized and existing under the laws of the state of California, with its principal place of business located in Newport Beach, California.

2.     WHGC is informed and believes that at all times relevant hereto, Defendant JASON BRIAN WITTEN (hereinafter "Witten") is and at all times herein mentioned, an individual formerly employed by WHGC, California and currently residing in the City of London, England.

3.     WHGC is informed and believes that at all times relevant hereto, Defendant WANG, HARTMANN, GIBBS & CAULEY LTD. (hereinafter "WHGC LTD") is and at all times herein mentioned, was limited company organized and registered under the laws of the United Kingdom, with its principal place of business at Blackwell House, Guildhall Yard, London EC2v 5AE.

4.     WHGC is informed and believes, and based thereon alleges, that at all times relevant herein, each of the Defendants named herein was the principal, agent, servant, joint venturer and/or employee of the other Defendants; and in doing the things alleged herein, was acting within the course and scope of such agency, joint venture and/or employment with the advance knowledge, permission, consent and/or acquiescence, or subsequent ratification of each and every remaining Defendant.  WHGC is further informed and believes, and based thereon alleges, that at all times relevant each of the Defendants named herein is or was responsible and liable in some manner for acts, omissions and damages as alleged herein.

5.     WHGC is informed and believes, and based thereon alleges, that at all times relevant herein, Defendant Witten was merely the alter ego of Defendant WHGC LTD.  WHGC is informed and believes, and based thereon alleges, that at all times relevant herein there was such a unity of interest between Defendant

2

Witten and WHGC LTD, that the separate personality of Defendant WHGC LTD did not in reality exist. WHGC is informed and believes that Witten has attempted to utilize the alleged corporate "veil" of Defendant WHGC LTD to perpetrate a fraud, circumvent contractual obligations, and/or to accomplish other wrongful and/or inequitable purposes. On information and belief, those wrongful and/or inequitable purposes were accomplished by, among other things, commingling funds and other assets, Defendant WHGC LTD's wholly inadequate capitalization as compared with its business operations and the risk of loss attendant thereto, and Witten's disregard of corporation formalities relative to Defendant WHGC LTD.

## JURISDICTION AND VENUE

6.     This claim has been brought for violation of the section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). This court accordingly has original subject matter jurisdiction pursuant to the provisions of 28 U.S.C. section 1331, 1338 and 15 U.S.C. 1121(a).

7.     This Court further has supplemental jurisdiction over WHGC's State Law actions under 28 U.S.C. section 1367(a). It is appropriate for this Court to exercise supplemental jurisdiction over these claims, which are so directly related to the Lanham Act claims in which this Court has original jurisdiction, that they form a part of the same case or controversy under Article III of the United States Constitution.

8.     In addition, this Court has Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. section 1332.

9.     This Court has personal jurisdiction over the Defendants as the Defendants regularly conduct business in this District and a substantial part of the events or omissions giving rise to the Plaintiff's claims against the Defendants occurred in this District.

10.    Venue is proper under 28 U.S.C. section 1391(b)(2) since a

FIRST AMENDED COMPLAINT

substantial part of the events giving rise to the claims occurred in this district, and Defendants conduct business in California.

## **ALLEGATIONS IN SUPPORT OF ALL CAUSES OF ACTION**

11. WHGC is a professional law corporation that has provided professional legal services to clients both in the United States and overseas since at least 1999.

12. Witten had been, and was an employee of WHGC since the inception of the company. Witten began his long career with the firm first as a law clerk, and has been employed on a full-time basis by WHGC as an associate attorney ever since being admitted to the California State Bar in the year 2002. Due to his long-time work and service to WHGC, Witten was a full time employee that was eventually entrusted by WHGC with many management-related duties of the firm, and was relied upon for his continued work and advisement for WHGC in the firm's continued growth and expansion. During his employment with the firm, and to facilitate the performance of duties on behalf of the firm, Witten was entrusted by WHGC with the company's intimate details including clientele, financial information, and internal management and external business strategies. In doing so, WHGC relied upon Witten's continued loyalty and dedication to the firm and trusted that Witten would not use that information for his sole personal benefit and/or in a manner that would injure WHGC.

13. In about the year 2009, Witten began to suggest to WHGC that it should expand and facilitate its services to potential clients in Europe by setting up an affiliate office in London, England. Witten further volunteered that he be the individual principally responsible in assisting WHGC to set up and manage the affiliate office.

14. Eventually, based upon the trust and confidence that WHGC had in Witten's abilities and loyalty to the firm, WHGC agreed to allow Witten a limited amount of time to set up an office in London to test the viability and profitability

4

of having such an office in that location to expand WHGC's business, and permitting Witten to use WHGC trademarked name and likeness in connection with Witten's endeavor for WHGC's benefit.

15. Witten left for the United Kingdom in March 2010 to set up WHGC's London office using WHGC's trademarked name, and WHGC is informed and believes that Witten has resided in England since that time.

16. The agreement between WHGC and Witten required that, while Witten was operating an affiliate office in the United Kingdom, Witten remained a full-time employee of WHGC, with full salary and benefits including a 401K retirement savings plan, health insurance, and the duty to submit timesheets on a monthly basis. Furthermore, WHGC agreed to continue to provide Witten with coverage under its legal malpractice insurance policy for legal services provided on behalf of WHGC. Moreover, as a full-time employee of WHGC, all clients for whom Witten performed legal services were WHGC's clients.

17. Furthermore, while Witten conducted his affiliate business on behalf of WHGC, administration and accounting matters were to remain centrally-based in, and directed from, WHGC's headquarters located in Newport Beach, California. For example, WHGC would continue to support Witten by making available to him the firm's research resources, computer, email account, cellular phone, attorneys, and staff in connection with his work on behalf of WHGC. Concomitantly, all clients for whom Witten provided services from offices in London, England were to be reported by Witten directly to WHGC, all invoices for legal services to those clients were to be prepared and issued to clients by WHGC's Newport Beach accounting department. Moreover, Witten was required to continue to submit monthly timesheets to WHGC at its Newport Beach office.

18. Since he left for the United Kingdom in March 2010, Witten appeared to be performing legal services from offices in London on behalf of, and in the interest of WHGC, in the same manner as he had done for the past 12 years

– as a full time employee. However, due to Witten's inability to generate sufficient clientele and income for WHGC through the London-based office, the decision was made by WHGC in September 2010 to close the London office and to request that Witten return to the United States. When WHGC requested that he do so, Witten refused to comply.

19.     While disappointed with Witten's refusal to return to the United States in September, WHGC agreed with Witten to allow Witten to continue his affiliation with WHGC on the condition that his status be reduced from full-time employment to "of counsel" status, under which he would be paid based on an hourly-rate rather than a full-time salary. This status was to become effective October 1, 2010.

20.     Immediately after the parties had negotiated Witten's new "of counsel" employment, however, WHGC was shocked to discover that Witten had been conducting himself in a manner that was in contravention of the parties' understanding, and had instead been engaging in activities for his own personal benefit and to the direct injury of WHGC – an employer with whom Witten had shared a long-standing relationship based on loyalty, trust, and confidence, that eventually developed into one of a fiduciary nature.

21.     Specifically, while Witten appeared to report his time billed to WHGC's clients on a monthly-basis, it was discovered by WHGC that he had in fact been providing unreported services to WHGC's clients and billing them separately without WHGC's knowledge, consent, or authority.

22.     On October 1, 2010, WHGC was surprised to discover an email sent by Witten on that date to one of WHGC's long-standing clients, which attached an invoice dated October 1, 2010, billing the client for services rendered throughout the month of September, 2010. In fact, the invoice was issued by Witten for these legal services to said client without reporting those services to WHGC and therefore without WHGC's knowledge or authority. The invoice further indicated

1   that Witten had also received payment from the client for services provided the

2   previous month in August, 2010. Imprinted on the invoice was WHGC's

3   registered trade name and logo. WHGC owns a valid and protectable trademark

4   and logo, which has been federally registered in the United States and abroad, a

5   true and correct sampling of which is attached hereto as Exhibit "A." However, it

6   was purportedly issued by a "Ltd." rather than "P.L.C." Furthermore, the email

7   from Witten to which the invoice was attached, listed WHGC's Newport Beach

8   address as an additional business office of WHGC LTD. (A true and correct copy

9   of the name and logo used by Defendants is attached hereto as Exhibit "B." A

10   redacted copy of the invoice in question is attached hereto as Exhibit "C.")

11       23. Upon further investigation, WHGC discovered that this "Ltd."

12   company was had been set up by Witten and registered in the United Kingdom as

13   Defendant WHGC LTD in about April 2010, immediately after Witten had moved

14   to the United Kingdom.

15       24. Upon yet further investigation, it was discovered that Witten had

16   been using WHGC's trademarked name and logo and WHGC's resources in order

17   to secretly communicate with and/or provide services to other existing and/or

18   prospective clients of WHGC. Furthermore, WHGC is informed and believes that

19   these clients were instructed by Defendants to pay Defendants directly and

20   without notice to WHGC, through a separate account in Witten and/or WHGC

21   LTD's name.

22       25. After discovering this conduct, WHGC immediately contacted

23   Witten by email and demanded that he cease and desist his conduct and further

24   informed him that, effective immediately, Witten was no longer authorized to use

25   WHGC's name or communicate with WHGC's clients without WHGC's prior

26   approval. Meanwhile, it was also discovered by WHGC that Defendants had also

27   set up a separate internet domain name www.whgc-uk.com, through which Witten

28   further marketed his legal services using WHGC's trademarked name and likeness

1  and communicated with clients without WHGC's knowledge.

2       26.   In response to WHGC's email, Witten admitted that he had been

3  providing services for this client since at least July 2010, and accused WHGC of

4  "trying to pull a UK firm client away" from Witten.

5       27.   In sum, Defendants' business was secretly conducted to effectively

6  compete directly against Witten's own employer, using WHGC's trademarked

7  name and logo, WHGC's resources, and WHGC's goodwill.

8       28.   WHGC is further informed and believes that Witten concealed his

9  activities and transactions from WHGC, using unwitting WHGC staff members to

10  do so.  In fact, WHGC is further informed and believes that Witten deliberately

11  bypassed WHGC staff who were in charge of billing clients.

12                   **FIRST CAUSE OF ACTION**

13       **(Trademark Infringement and False Designation of Origin)**

14               **(Against All Defendants)**

15       29.   WHGC incorporates by reference all allegations contained in all

16  preceding and subsequent paragraphs.

17       30.   Based on information and belief, Defendants' conduct complained of

18  herein constitutes Trademark Infringement and Unfair Competition in violation of

19  Section 43(a) of the Lanham Act, 15 U.S.C. sections 1114 and 1125(a).

20       31.   WHGC owns a valid and protectable trademark and logo, which has

21  been federally registered in the United States and abroad, a true and correct

22  sampling of which is attached hereto as Exhibit "A."

23       32.   Defendants have used WHGC's trademark and logo as described

24  above without the consent, knowledge, or authorization of WHGC, in a manner

25  that has, and is likely to cause confusion among clients for legal services as to the

26  source of those legal services.

27       33.   Based on information and belief, WHGC has been seriously and

28  irreparably damaged by Defendants' unlawful conduct described herein, by using

WHGC's registered trademark and logo to develop an independent business to the exclusion of WHGC, without the knowledge or consent of WHGC.

34.   Based on information and belief, such conduct will continue, and further damage and harm will be inflicted upon WHGC unless Defendants' conduct is enjoined.

35.   Upon information and belief, and as a result of the acts of Defendants, WHGC has suffered and will continue to suffer monetary damages in an amount not yet determined.  Additionally, WHGC has incurred and will incur liability for costs and attorneys' fees.

36.   Upon information and belief, Defendants' conduct complained of herein was intentional, malicious, and willful.

37.   Upon information and belief, unless Defendants are restrained and enjoined by this Court, Defendants' actions will continue to cause irreparable harm and injury to WHGC.

38.   Due to the malicious and willful conduct of Defendants herein, WHGC seeks treble damages and attorneys' fees pursuant to 15 U.S.C. 1117.

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty and Duty of Loyalty)

### (Against Witten)

39.   WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

40.   As described above, the relationship between WHGC and Witten grew over the course of many years into one that was fiduciary in nature.  Such duties included, but were not limited to the following:

   a. Obtaining and maintaining clients for WHGC;

   b. Supervising and directing the work and activities of associates at WHGC;

   c. The provision of opinions and analyses for WHGC related to its

9

FIRST AMENDED COMPLAINT

internal financial and legal affairs;

   d.  The negotiation of contracts with WHGC's vendors and suppliers;

   e.  Serving as the "face" of the firm in both domestic and international sales "pitches."

41.   In the course of performing his duties as set forth herein, Witten was entrusted by WHGC with an intimate knowledge and understanding of WHGC's confidential and proprietary information for the sole purpose of enabling him to perform his various duties as a key employee of WHGC, placing him in a position in which he was required to exercise management-level discretion in WHGC's best interests. Indeed, WHGC reposed the highest degree of trust and confidence in Witten to use this information and WHGC's resources to further – not injure - WHGC's business goals, and Witten accepted this relationship in connection with his continued employment with WHGC while operating out of his office in the United Kingdom.

42.   Not only was Witten entrusted with the care and responsibility for the firm's clients and their private information, he was entrusted with access to WHGC's books, records, and computer files and information encompassing, without limitation, WHGC's billing structures and information, the historical financial information of WHGC, the tax and compensation records of the shareholders, attorneys, and staff of WHGC. As referenced above, by virtue of his duties and position with WHGC, where he was entrusted with the above responsibilities and obligations to protect and preserve WHGC's confidences, Witten was bound by a fiduciary duty to refrain from conduct including, without limitation, unlawfully using, disclosing, or distorting such information to WHGC's detriment and injury.

43.   On information and belief, WHGC LTD, as the entity through which Witten conducted the unlawful activities described above, the direct beneficiary of the obvious and further as an ostensible agent of WHGC purporting to perform

services on WHGC's behalf, similarly shared a confidential and fiduciary relationship with WHGC, and owed to WHGC the highest duties of loyalty, care, and disclosure as were owed by Witten to WHGC.

44.     Witten breached his fiduciary duty to WHGC by negligently, deliberately, intentionally and/or recklessly disregarding the rights of WHGC and failing to perform his obligations to WHGC, and using WHGC's trademarked name and logo to appropriate WHGC's existing clients and to market Witten's legal services to other clients in direct competition against WHGC.

45.     Due to WHGC's trust and reliance on Witten's express and implied representations and omission, WHGC could not and did not discover the breaches of duties, the falsity of the representations, and the actual omissions, as alleged herein, until in or October 2010.

46.     As a direct and legal result of the breach of fiduciary duty of Witten, as alleged herein, WHGC has suffered general damages in a sum according to proof.

47.     Witten's conduct described hereinabove was done with a conscious disregard of WHGC's rights and with an intent to vex, injure or annoy WHGC, such as to constitute oppression, fraud, or malice pursuant to California Civil Code Section 3294, thereby entitling WHGC to punitive damages in an amount appropriate to punish, deter, or set an example of Defendant.

## **THIRD CAUSE OF ACTION**

### **(Fraud)**

### **(Against All Defendants)**

48.     WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

49.     At all relevant times mentioned herein until at least September 30th, Witten was a full-time employee of WHGC as described above. Furthermore, such relationship was a unique and intimate one in which Witten owed WHGC a

fiduciary duty and duty of loyalty as described above.

50. Witten made the promises referred to hereinabove and below to WHGC, which were important to the transactions described herein that permitted Witten to travel to the United Kingdom to use WHGC's trademarked name, logo and resources to expand WHGC's overseas business.

51. Alternatively and/or additionally, based on information and belief, Witten intentionally failed to disclose to WHGC important facts that were known only to Witten, and/or disclosed some facts to WHGC but intentionally failed to disclose other important facts known only to Witten, making the disclosure deceptive, as described hereinabove. Such facts that were fraudulently omitted included the facts that Witten, through his new entity WHGC LTD intended to use WHGC's trademarked name and logo for the purposes of taking WHGC's existing clients, seeking new clients for Witten's sole benefit to the unlawful and unfair exclusion of WHGC, and directly competing against WHGC for business.

52. Based on information and belief, Witten also actively concealed these important facts from WHGC including those described above and/or prevented WHGC from discovering such facts.

53. Witten also made certain promises to WHGC to abide by certain rules and restrictions set forth in the WHGC Employee Handbook when he signed the Employee Handbook without any intention to perform them when he made them. In particular, the WHGC Employee Handbook contains passages such as:

• Unauthorized use of disclosure of business "secrets" or Confidential Information belonging to Wang, Hartmann & Gibbs, PC, its employees or clients including but not limited to documents, forms, client lists, keys or equipment;

• Failure to adequately protect the Confidential Information of the Firm and its clients, including the proper handling and destruction of documents;

• Unauthorized possession, removal or use of Wang, Hartmann & Gibbs, PC property, information or funds;

\* \* \*

12

FIRST AMENDED COMPLAINT

- Insubordination or other disrespectful or uncooperative conduct;

\* \* \*

- Unsatisfactory performance or conduct;
- Inappropriate disparagement of Wang, Hartmann & Gibbs, PC; and

\* \* \*

As an employee of Wang, Hartmann & Gibbs, PC, you re expected to avoid any activity, transaction or investment that could be construed as a conflict of interest with Wang, Hartmann, & Gibbs, PC or its clients, including any behavior that gives the appearance of taking money, merchandise or services from a client or vendor for personal gain, or that interferes with your ability to be at work and perform the job dues expected of you.  This policy also applies to second employment that may interfere with the employee's ability to be at work when required and perform the duties of the employee's position.

If you engage in any activity, transaction or investment that might cause a conflict between personal and Wang, Hartmann & Gibbs, PC interests, information about that potential conflict must be disclosed in writing to Elaine Wu or Jeffrey Wang.

\* \* \*

**Confidentiality**  As an employee of Wang, Hartmann & Gibbs, PC you will directly or indirectly gain access to information about Wang, Hartmann & Gibbs, PC, its operations and its clients that is absolutely confidential. This Confidential Information, includes, but is not limited to, all client information including contact information; personnel information including contact, wage and benefits information; vendor information including contact and pricing information; contracts between Wang, Hartmann & Gibbs, PC and any client, employee or vendor; the way in which we produce and market our services; referral and referral source information; our financial information and structure; our modes and methods of conducting business; all copyrighted and non-copyrighted or non-protected computer software programs; all work product created or produced by you on behalf of Wang, Hartmann & Gibbs, PC, and; all confidential and/or sensitive client information ("Confidential Information").

13

FIRST AMENDED COMPLAINT

All Confidential Information is proprietary to Wang, Hartmann & Gibbs, PC. Employees shall keep all such Confidential Information in confidence, both during their employment and at all times thereafter. Unless required by law, or for a legitimate business purpose benefiting Wang, Hartmann & Gibbs, PC, Employee shall not disclose, directly or indirectly, any such Confidential Information to anyone outside Wang, Hartmann & Gibbs, PC without written permission from Jeffrey Wang or Elaine Wu. Accordingly, each employee will be supplied with a shredder. Therefore, all paperwork containing Confidential Information must be either put into files or promptly shredded by each employee.

Upon termination of your employment for any reason, or at any other time upon request, you shall deliver promptly to Wang, Hartmann & Gibbs, PC all Confidential Information, as well as any and all property, material and documentation relating to Wang, Hartmann & Gibbs, PC, its operation and its clients, whether or not of a confidential nature, and you agree not to retain any document or data containing any Confidential Information upon the termination of your employment.

Upon termination of your employment for any reason, you must continue to treat as confidential and proprietary any Confidential Information, including but not limited to the information described above, and may not use or release any Confidential Information concerning Wang, Hartmann & Gibbs, PC to any person, firm or institution without the express written approval of Elaine Wu or Jeffrey Wang.

* * *

Wang, Hartmann & Gibbs, PC ("the Firm") and Employee acknowledge that Employee, in performing the terms and conditions of Employee's employment, will directly or indirectly access to information about Wang, Hartmann & Gibbs, PC and its clients and operations that is highly sensitive and confidential. This Confidential information includes, but is not limited to, the Firm's modes and methods of conducting business, marketing its services, its client, employee, customer, vendor and referral source lists, its trade secrets, its copyrighted and non-copyrighted or non-protected computer

14

FIRST AMENDED COMPLAINT

software programs, its techniques of operation, its financial structure, and its weaknesses, if any (hereinafter referred to as "Confidential Information"). Further, the Confidential Information specifically includes client information obtained as a result of employee's employment with Wang, Hartmann & Gibbs, PC.

Wang, Hartmann & Gibbs, PC and Employee acknowledge and agree that all Confidential Information shall be deemed to be highly confidential, shall constitute the Company's trade secrets and shall remain the sole property of the Company. Employee agrees not to in any way communicate, reveal or divulge any Confidential Information to any person or entity not employed by the Company, without advance, written approval of such communication from Jeffrey Wang or Elaine Wu. Accordingly, each employee will be supplied with a shredder. Therefore, all paperwork containing Confidential Information must be either put into files or promptly shredded by each employee.

Upon termination of employment with Wang, Hartmann & Gibbs, PC for any reason, or at any other time the Firm demands, Employee shall deliver promptly to Wang, Hartmann & Gibbs, PC all material and documentation relating to the Firm and its clients, including without limitation all files, pleadings, memoranda, notes, records, reports, manuals, employee lists, customer lists, referral source lists, vendor service lists, software, programs, and other documents, whether or not of a confidential nature, belonging to the Firm, including all copies of such materials which Employee may then possess or have under Employee's control. Employee further agrees that upon termination of employment Employee shall not retain any document or data of any description containing or pertaining to the Confidential Information.

Employee agrees that the terms of this Confidentiality provision shall survive termination of Employee's employment.

* * *

54.    Based on information and belief, Witten maliciously and willfully intended to deceive WHGC by concealing those facts, including without limitation those described above and below. Witten also intended WHGC to rely on Witten's promises in order to induce WHGC to continue paying Witten's

15

1  salary while Witten stole clients from WHGC and marketed business for himself
2  to the exclusion of WHGC and in direct competition with WHGC.

3      55.    WHGC reasonably relied on Witten's false promises and deception
4  and concealment. Indeed, but for such omitted facts, WHGC would not have
5  continued to pay Witten's salary as a full-time employee while Witten engaged in
6  these unlawful and deceptive activities.

7      56.    Based on information and belief, WHGC LTD aided and abetted
8  Witten's deception by encouraging, facilitating, and assisting Witten in the
9  conduct described hereinabove. Furthermore, Witten failed to perform the
10 promises to his long-time employer relating to setting up and operating a business
11 in the United Kingdom, using WHGC's trademarked name, logo, and resources to
12 expand WHGC's business and in a manner that would not cause injury to WHGC,
13 and Plaintiff's reliance on those promises was a substantial factor in causing harm
14 to Plaintiff.

15     57.    As a proximate result of Witten's conduct WHGC has been damaged
16 in an amount to be proven at trial. That Defendants' concealment was a substantial
17 factor in causing Plaintiff's harm.

18     58.    Based upon information and belief, in doing the acts alleged herein,
19 Defendants acted with oppression, fraud and/or malice within the meaning of
20 California Civil Code section 3294. As such, Plaintiff is entitled to recover
21 punitive damages against Defendants in a sum sufficient to punish or otherwise to
22 set an example of their oppressive conduct herein.

## FOURTH CAUSE OF ACTION

### (Conversion and Embezzlement)

### (Against All Defendants)

26     59.    WHGC incorporates by reference all allegations contained in all
27 preceding and subsequent paragraphs.

28

16

FIRST AMENDED COMPLAINT

60.     In the course of work done by defendants on behalf of WHGC or representing themselves as performing legal services on behalf of WHGC, Defendants collected monies which belonged to WHGC.

61.     Defendants fraudulently appropriated those funds.  Indeed, Witten concealed the fact that he had collected such funds from WHGC and deposited those funds in his own personal bank account.

62.     Plaintiff has demanded, and continues to demand, the amounts due and owing to Plaintiff.

63.     Witten has refused to return those funds to WHGC.

64.     Since the time of the demand, Defendants have not been in lawful possession of Plaintiff's funds and have converted the same for their own use.

65.     As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages in an amount to be proven at trial

66.     Plaintiffs are informed and believe, and based thereon allege, that in doing the acts alleged herein, Defendants acted with oppression, fraud and/or malice within the meaning of Civil Code § 3294.  As such, Plaintiffs are entitled to recover punitive damages against Defendants in a sum sufficient to punish or otherwise to set an example of their despicable conduct herein.

## FIFTH CAUSE OF ACTION

**(California Statutory Unfair Competition – Cal. Bus. And Prof. Code section 17200, et seq.)**

**(Against All Defendants)**

67.     WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

68.     By the conduct of Defendants alleged above and below, which involved acts such as, but not limited to, using WHGC's trademarked name and

FIRST AMENDED COMPLAINT

logo in the manner described herein, breaching fiduciary duties, committing fraud, and conversion/embezzlement. Defendants have intentionally and willfully engaged in unlawful, unfair and/or fraudulent methods of competition, and unfair or deceptive acts and/or practices, in violation of Cal. Bus. & Prof. Code section 17200, et seq. The public was and is likely to be deceived by the Defendants' actions.

69. Based on information and belief, WHGC alleges that unless restrained by this Court, Defendants will continue to infringe WHGC's trademarks, and use WHGC's confidential information in an unlawful manner designed to compete directly against WHGC, and commit unlawful acts as alleged above and below.

70. WHGC requests that the conduct be enjoined, and that any monies derived by Defendants from such unlawful conduct be disgorged in favor of WHGC.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief)

### (Against All Defendants)

71. WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

72. WHGC is informed and believes, and based thereon alleges, that an actual controversy has arisen and now exists between WHGC, Witten, and WHGC LTD concerning their respective rights and duties in that WHGC contends that Defendants were never authorized to engage in the activities herein described.

73. WHGC desires a judicial determination of Witten and WHGC LTD's rights and duties, and a declaration including, without limitation, the following:

    a. That at all relevant times herein through September 30, 2010, "Wang, Hartmann, Gibbs & Cauley, PLC," "Wang, Hartmann, Gibbs & Cauley," "WHGC," and any substantially similar permutations

18

thereof including without limitation "Wang, Hartmann, Gibbs & Cauley Ltd.," as well as the logo attached hereto as Exhibit "A," are, and were, federal trademarks owned by WHGC and were and are protected from any infringement by Witten and WHGC LTD (the "Trademark");

b. That at all relevant times herein through September 30, 2010, Witten was a full-time employee of WHGC;

c. That at all relevant times herein through September 30, 2010, Defendants have never owned any interest in the Trademark;

d. That at all relevant times herein through September 30, 2010, Defendants have never obtained any express license from WHGC to use the Trademark;

e. That at all relevant times herein through September 30, 2010, Defendants have had no authority, either express, implied, or otherwise, to use, transfer, and/or assign the Trademark in any manner other than for the purpose of providing services to WHGC's clients for WHGC's benefit, if at all;

f. That at all relevant times herein through September 30, 2010, Defendants were prohibited using, transferring, and/or assigning the Trademark in any manner for purposes other than (at a maximum) providing services to WHGC's clients for WHGC's benefit, if at all;

g. That at all relevant times herein, Defendants have had no authority, either express, implied, or otherwise, to use, transfer, and/or assign any equipment or resources of WHGC such as (without limitation) its computers, software, email system, cellular telephone, online research databases, staff, and attorneys in any manner other than for the purpose of providing services to WHGC's clients for WHGC's benefit, if at all;

19

FIRST AMENDED COMPLAINT

h. That at all relevant times herein through September 30, 2010, Defendants were prohibited using, transferring, and/or assigning any equipment or resources of WHGC such as (without limitation) its computers, software, online research databases, email system, cellular telephone, staff, and attorneys in any manner for purposes other than providing services to WHGC's clients for WHGC's benefit, if at all;

i. That at all relevant times herein through September 30, 2010, any clients for whom Defendants provided legal services were in fact clients of WHGC, irrespective of whether the clients were referred to Defendants by WHGC or whether such clients were obtained by Witten separately;

j. That at all relevant times herein through September 30, 2010, that Defendants owed to WHGC a duty of loyalty as a full time employee of WHGC;

k. That at all relevant times herein through September 30, 2010, Defendants owed to WHGC a fiduciary duty of care, loyalty, and disclosure to WHGC;

l. That at all relevant times herein through September 30, 2010, Defendants were required to disclose to WHGC all communications with any clients with or without WHGC's direct request;

m. That at all relevant times herein through September 30, 2010, Defendants were required to disclose to the terms of any and all fee agreements with WHGC that Defendants entered, or proposed to enter into, with any existing or prospective clients WHGC with or without WHGC's direct request;

n. That at all relevant times herein through September 30, 2010, any attempt by Defendants to independently operate a law office that

20

FIRST AMENDED COMPLAINT

separately obtained clients and collected fees from such clients to the
exclusion of WHGC far exceeded the scope of authority, if any, ever
provided to Defendants to set up a London-based office on behalf of
WHGC, and that such conduct was unlawful;

o. That WHGC LTD is an asset owned by WHGC;

p. That WHGC is entitled to the return of all monies obtained by, or that
are still owed to them in connection with any legal services provided
using the WHGC name;

q. That Defendants must disgorge all monies obtained by, or that are
still owed to them in connection with any legal services provided
using the WHGC name;

r. That WHGC is immediately entitled to the return of all equipment
including, without limitation, any equipment or resources of WHGC
such as (without limitation) its computers, software, and cellular
telephone;

s. That Defendants must return any and all equipment or resources of
WHGC such as (without limitation) its computers, software, and
cellular telephone; and

t. That any activities conducted by Defendants without WHGC's prior
knowledge are not, nor were they ever covered by WHGC's legal
malpractice insurance, and that therefore any liability should be
borne by Defendants alone.

74. A judicial determination is necessary and appropriate at this time
under the circumstances in order that WHGC may conclusively ascertain whether
Witten and WHGC LTD are in direct breach of their legal duties and obligations
owed to WHGC, and to further ascertain WHGC's rights and remedies with
respect thereto;

75. Without such relief, Defendants threaten to continue what WHGC

21

FIRST AMENDED COMPLAINT

contends are unlawful activities which will cause, and have already cause, injury to WHGC's business, name, reputation, and goodwill; moreover, WHGC requires this determination to conclusively ascertain its responsibilities and duties, if any, to Defendants under the circumstances described herein.

76. WHGC further respectfully requests that the Court issue any injunctive relief consistent with its declaratory orders herein.

WHEREFORE, WHGC, prays for judgment against the Defendants, and each of them as follows:

1. On all causes of action, for general, consequential and incidental damages;

2. On all causes of action, for attorneys' fees and costs as allowed by contract, statute, or law; and

3. On all causes of action, for such other and further relief as this Court deems just and proper.

4. On all of Causes Action, temporary, preliminary and/or permanent orders enjoining Defendants from engaging in all activities constituting infringement of WHGC's trademark, breaches of Defendants' fiduciary duties and/or loyalty owed to WHGC, and unfair business practices pursuant to Business and Professions Code section 17200 et seq., acts of fraud, and conversion/embezzlement, and for a full disgorgement of any and all monies obtained by Defendants in connection with such conduct; and further that all equipment and other property of WHGC be returned to WHGC forthwith;

5. On the Sixth Cause of Action, a judicial determination of the rights and duties of the respective parties, a declaration of those rights and duties, and injunctive orders consistent therewith;

FIRST AMENDED COMPLAINT

1        6.     Punitive damages and/or exemplary treble damages as to the First,

2           Second, Third, and Fourth Causes of Action.

3

4 Dated: October 20, 2010       WANG HARTMANN GIBBS & CAULEY, PLC

5

6                        By: _____

7                              Richard F. Cauley

8                              Attorneys for Plaintiff
                               WANG HARTMANN GIBBS & CAULEY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

1    <u>DEMAND FOR JURY TRIAL</u>

2         Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal

3    Rules of Civil Procedure.

4

5    Dated: October 20, 2010          WANG HARTMANN GIBBS & CAULEY, PLC

6

7                                     By:

8                                        Richard F. Cauley
                                         Attorneys for Plaintiff
9                                        WANG HARTMANN GIBBS & CAULEY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24
FIRST AMENDED COMPLAINT

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

EXHIBIT C

## INVOICE

Page 1 of 2

October 1, 2010

<u>Via Email Only</u>
Emailed to 


CA



**WANG, HARTMANN, GIBBS & CAULEY, LTD.**
Blackwell House, Guildhall Yard
London, EC2V 5AE
Tel. (0)20-3287-9500

### Services for Current Month:

| Date | Description | Time | Amount |
|------|-------------|------|--------|
| ▮ | ▮ | 1.4 | ▮ |
| ▮ | ▮ | .4 | ▮ |
| ▮ | ▮ | 1.0 | ▮ |
| ▮ | ▮ | .2 | ▮ |
| ▮ | ▮ | .3 | ▮ |
| ▮ | ▮ | 2.1 | ▮ |
| ▮ | ▮ | 1.9 | ▮ |
| ▮ | ▮ | .5 | ▮ |
| ▮ | ▮ | .8 | ▮ |
| ▮ | ▮ | .9 | ▮ |
| ▮ | ▮ | 1.4 | ▮ |
| ▮ | ▮ | .5 | ▮ |
| | Total Courtesy Discounts* | 1.8 | -$720 |
| | **Total in $** | | $3,840.00 |
| | **Total in £ (.6288 £/$ on 9/30)** | | £2,414.59 |

### Payment History

| Date | Description | Amount |
|------|-------------|--------|
| 8/31 | Amount Due from August | -£482.40 |
| 9/9 | Payment Received – Thank You | £449.61 |

September 30, 2010
Page 2 of 2

| | Courtesy Discount* - Currency Exchange | £32.79 |
|---|---|---|
| | Amount Due from September | -£2,414.59 |

## Amount Now Due:    £2,414.59

Payments made after the statement date may not be reflected.

\* Courtesy discounts are not always offered.

Thank you for choosing WHGC to assist you with this matter. We look forward to your continued business. Should you wish to discuss this invoice, or any other matter, do not hesitate to contact us.