**WANG HARTMANN GIBBS & CAULEY, PLC**
Richard F. Cauley (SBN: 109194)
RichardCauley@whgclaw.com
John van Loben Sels (SBN 201354)
jvanlobensels@whgclaw.com
1301 Dove Street, Suite 1050
Newport Beach, California 92660
Telephone:  (949) 833-8483
Facsimile:  (949) 833-2281

Attorneys for Plaintiff
WANG HARTMANN GIBBS & CAULEY, PLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| WANG HARTMANN GIBBS & CAULEY, PLC, a  Corporation,<br><br>                    Plaintiff,<br><br>    vs.<br><br>JASON BRIAN WITTEN, an individual; and WANG, HARTMANN, GIBBS & CAULEY LTD., a United Kingdom Private Limited Company.<br><br>                    Defendants. | Case No.:  SACV10-1499-JVS (MLGX)<br>Assigned for All Purposes to:<br>Honorable James V. Selna<br><br><br>**PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br><br>Hearing<br>Date: January 24, 2011<br>Time: 1:30 p.m.<br>Dept. 10C |

i

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO
DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ...................................................................................... 1

II     FACTUAL BACKGROUND ....................................................................... 2

III.    LEGAL ARGUMENT ................................................................................ 6

        A.      Standard for this Motion ................................................................ 6

        B.      The October 15th Email Was A Term Sheet or Agreement to
                Agree ............................................................................................ 8

        C.      The Terms Of October 15th Email Are Incomplete, Uncertain,
                and Unenforceable. ...................................................................... 11

        D.      Mr. Witten's "Acceptance" Rejected The October 15th Email .......... 14

IV.     CONCLUSION ....................................................................................... 15

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO
DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES (IN ALPHABETICAL ORDER)

PAGE

## Cases

*Banc of America Strategic Solutions, Inc. v. Mohamed*,
   2008 WL 2756602 (S.D.Cal. 2008) ................................................................ 6

*Bartone v. Taylor-Benson-Jones Co.*,
   119 Cal.App.2d 79 (1953)........................................................................... 14

*Beck v. American Health Group Int'l, Inc.*,
   211 Cal. App. 3d 1555 (1989).................................................................. 9, 12

*Bustamante v. Intuit, Inc.*,
   141 Cal. App. 4th 199 (2006)........................................................................ 8

*Callie v. Near*,
   829 F.2d 888 (9th Cir 1987).................................................................... 6, 11

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   43 Cal. 4th 375 (2008)................................................................................. 7

*Doi v. Halekulani Corp.*,
   276 F.3d 1131 (9th Cir. 2002)...................................................................... 8

*Hamilton v. Willms*,
   2007 WL 707518 (E.D.Cal. 2007) ............................................................... 8

*Hayward Lumber & Inv. Co. v. Construction Products Corp*,
   117 C.A.2d 221 (1953)............................................................................... 15

*Hermetic Order of the Golden Dawn, Inc. v. Griffin*,
   2008 WL 223403 (N.D.Cal. 2008)................................................................ 8

*Hernandez v. Badger Constr. Equip. Co.*,
   28 Cal. App. 4th 1791 (1994)....................................................................... 7

iii

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO
DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

*In re Pago Pago Air Crash*,
    637 F.2d 704 (9th Cir. 1981)........................................................................12

*In re Western Asbestos Co.*,
    416 B.R. 670 (N.D.Cal. 2009)......................................................................6

*Inamed Corp. v. Kuzmak*,
    275 F.Supp.2d 1100 (C.D.Cal. 2002)........................................................13

*Kelley v. Euromarket Designs, Inc.*,
    2008 WL 109332 (E.D.Cal. 2008) .......................................................13, 14

*Landberg v. Landberg,*
    24 C.A.3d 742, 752 (1972)..........................................................................15

*Lindsay v. Lewandowski*,
    139 Cal. App. 4th 1618 (2006).............................................................12, 13

*Niles v. Hancock*,
    140 Cal. 157 (1903).....................................................................................15

*Nite & Day Power Technologies v. Corporate Capital Resources, Inc.*,
    1995 WLL 7942 (N.D.Cal. 1995) ................................................................8

*Pacific Gas and Electric Company v. G.W. Thomas Drayage & Rigging Co, Inc.*,
    69 Cal. 2d 33 (1968)......................................................................................7

*Rivers v. Beadle*,
    183 Cal.App.2d 691 (1960)..........................................................................12

*Roden v. Bergen Brunswig Corp.*,
    107 Cal. App. 4th 620 (2003)........................................................................6

*Terry v. Conlan*,
    131 Cal.App.4th 1445 (2005).................................................................11, 12

*Trident Center v. Connecticut General Life Ins. Co.*,
    847 F.2d 564  (9th Cir. 1998) .....................................................................7

iv

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO
DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Walker v. Gomez,*
    609 F. Supp.2d 1149 (S.D.Cal. 2009) .......................................................7, 10

*Wallis v. Centennial Ins. Co., Inc.,*
    2010 WL 2640247 (E.D.Cal. 2010) ....................................................6, 10, 11

*Weddington Prods., Inc. v. Flick,*
    60 Cal.App.4th 793 (1998).................................................................11, 13

<u>California & Federal Statutes</u>                                 <u>Page</u>

CAL. CODE CIV. P. SECTION 1585 ..........................................................15

CAL. CIV. P. SECTION 1636 .................................................................6

RESTATEMENT 2ND, CONTRACTS.......................................................12, 15

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO
DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff, Wang, Hartmann, Gibbs & Cauley PLC ("WHGC") hereby submits the following opposition to Defendant Jason Witten's Motion to Enforce Settlement Agreement as follows:

## I.   INTRODUCTION

Summary enforcement of the alleged settlement agreement which is the subject of Mr. Witten's motion cannot be granted here because there is no settlement agreement for the Court to enforce.  By their motion, Defendants Jason Brian Witten ("Witten") and Wang, Hartmann, Gibbs & Cauley, Ltd. ("WHGC LTD.")(collectively, "Defendants") seek to summarily enforce an agreement which does not exist on terms that Plaintiff Wang, Hartmann, Gibbs & Cauley, PLC ("WHGC") never agreed to.

After WHGC discovered that Mr. Witten was illicitly conducting business through a separate law firm in the United Kingdom for his own profit during the course of his full-time employment with WHGC, Mr. Witten's representations of full disclosure and transparency could no longer be trusted.  At no time did WHGC agree to an immediate dismissal of its claims against Mr. Witten for, *inter alia*, trademark infringement, breach of fiduciary duty, and fraud.  While WHGC was willing to discuss an informal resolution of the dispute with Defendants, WHGC's investigation of its claims continues.

Accordingly, WHGC offered to Mr. Witten on October 15, 2010 a framework for the parties to eventually resolve their dispute.  WHGC's offer was conditioned upon Defendants providing sufficient information and documentation to enable WHGC to review and assess the extent of Mr. Witten's conduct as well as WHGC's potential exposure to liability for any malpractice conducted by Mr. Witten.  Defendants have mischaracterized WHGC's proposal as comprising an immediate offer of settlement of the entire lawsuit that excluded any opportunity for review by WHGC of the documentation to be provided by Defendants.  Such a

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

construction would have eviscerated the very purpose of the term requiring documentation from Defendants in the first place, which was to place WHGC in position to make an informed decision as to the final settlement which the parties all anticipated would require a further and more detailed written instrument.

In sum, no "settlement agreement" existed, and therefore none can be enforced.  To the extent that the parties sought an informal resolution of their dispute, it was conditioned upon WHGC's review and satisfaction with Defendants' full and complete disclosure of the documents it required to evaluate Mr. Witten's behavior (a disclosure which remains incomplete).   Given that no settlement agreement among the parties exists, summary adjudication thereof is inappropriate and the Motion must be denied.

## II.  FACTUAL BACKGROUND

On October 1, 2010, WHGC contacted Mr. Witten concerning WHGC's discovery of Mr. Witten's operation of a separate law firm practice – while employed as a full time WHGC associate.  Mr. Witten had practiced law in the U.K through this separate firm without the knowledge, authorization and/or consent of WHGC, and Mr. Witten improperly solicited WHGC's existing and prospective clients.  Declaration of Richard F. Cauley ("Cauley Decl."), para. 4.  At that time, Mr. Witten was informed that he was "no longer authorized to hold [himself] out as representing WHGC, using the WHGC trademark, either in the US or the UK, without specific prior authorization or to communicate with any Firm clients without the specific prior authorization of Firm management."  Cauley Decl., para. 4.  Mr. Witten was further informed that WHGC's investigation would continue to ascertain the extent of his conduct.  Cauley Decl., para. 4.

On October 6, 2010, after discovering that Mr. Witten had established a new internet domain called "whgc-uk.com" on or about October 2, 2010, in complete contravention of WHGC's specific instructions of the previous day, Mr. Witten's

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

employment was terminated effective immediately.   Cauley Decl., para. 5.  In connection with this termination and WHGC's investigation of Witten's underlying activities, Mr. Witten was forwarded a cease and desist demand and an initial set of demands and requests for information and documentation to permit WHGC to investigate the scope of his conduct during the course of his full-time employment with the firm.  Cauley Decl., para. 5.  Specifically, Mr. Witten was requested to provide the identity and contact information of all clients for whom he had performed work since moving to the U.K (i.e., in March 2010) and a full accounting for all such clients. Additionally, it was demanded that Mr. Witten immediately cease using the WHGC name in any manner, and cease all communications with WHGC clients.  Cauley Decl., para. 5.

On October 11, 2010, Mr. Witten indicated his intent to comply with WHGC's demands and provided WHGC with initial responses to WHGC's requests for information in summary form, but did not provide any bank account information or specific documentation regarding such bank account information.  Cauley Decl., para.

To further investigative efforts toward settlement of the dispute, WHGC contacted Mr. Witten on October 15, 2010 with an additional proposal or term sheet of demands for information and documentation before a settlement of the lawsuit could be consummated.  Cauley Decl., para. 7.  The proposal required Witten to perform certain acts, including providing WHGC with full and complete disclosure and production of information and documents relating to his representation of all clients between March 2010 to September 30, 2010.  Specifically, this included (1) Mr. Witten would not to use the WHGC name in any country; (2) Mr. Witten would certify full disclosure of all clients for whom he provided services in the UK and *to provide copies of all documents associated with such representation*."; (3) Mr. Witten would indemnify WHGC for any

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

malpractice; (4) WHGC would dismiss its complaint with prejudice and Mr. Witten would not file any claims in the future in connection with matters arising out of his employment with WHGC; (5) a confidentiality provision and a future agreement for a mutually acceptable press release announcing settlement and dismissal; and (6) future execution of mutual general releases.  Mr. Witten had already undertaken to provide some of the information as referenced above, but the disclosure and document production nevertheless remained incomplete.

Importantly, the purpose of this request for information was to place WHGC in a position to be able to make an informed decision as to settlement and the material terms thereof.  Cauley Decl., para. 7.  Mr. Witten had already undertaken to provide some of the information as referenced above, but the disclosure and document production nevertheless remained incomplete. On October 20, 2010, Mr. Witten responded WHGC's October 15th email purporting to "have accepted [WHGC's] settlement offer," although the email was neither called a "settlement offer," nor was it intended to be so.  Cauley Decl., para. 9.

On October 29, 2010, WHGC again contacted Mr. Witten by email, to follow up with him regarding the still omitted information and documentation needed by WHGC to continue its investigation of the scope of Witten's conduct with respect to his law practice in London, and to further assess the extent of WHGC's exposure to liability for Mr. Witten's legal services provided to clients from March 2010 to October 8, 2010.  It was specifically requested that Mr. Witten full and complete disclosure of all clients for whom Mr. Witten had provided services through October 8 including all retention agreements, records of invoices and payments, and correspondence with those clients; and all bank records use in connection with his law practice in London from March 2010 to October 8, 2010.  Declaration of John van Loben Sels ("van Loben Sels Decl."), para. 4.

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

Mr. Witten resisted WHGC's follow-up request for this information on the basis that he had already accepted a "settlement offer."  *See* van Loben Sels Decl., para. 5.  WHGC clarified the nature of WHGC's prior October 15th email as a "general term sheet, or more precisely an approach which hopefully w[ould] lead to a future settlement of WHGC's claims and [his] defenses," and that there was therefore no "settlement" of the lawsuit – nor could there have been any settlement of the lawsuit so long as WHGC was not first provided an opportunity to receive all documents and information from Witten relating to his representation of clients while in London.  *See* van Loben Sels Decl., para. 6.  Mr. Witten was specifically informed that "there is no final settlement agreement (nor could there be at this point)," and was reminded that "[u]ntil [he] produce[d] the documents and records [he] agreed to produce, the Firm cannot know, for example, the full extent of WHGC's possible exposure to future malpractice claims from clients for whom [he] provided legal services (and therefore the scope of [his] agreed indemnification)."  *See* van Loben Sels Decl., para. 6.

However, Mr. Witten maintained a position that the information and documentation requested by WHGC would be provided only upon WHGC's "guarantee that it will dismiss the action with prejudice" – a guarantee that could not be provided by WHGC of course until after WHGC's receipt and review of the information to WHGC's satisfaction.  Indeed, the documentation and information was necessarily a precondition to dismissal of the lawsuit and execution of settlement-related documents.  *See* van Loben Sels Decl., para. 7-8.

The disagreement over the interpretation of WHGC's October 15th term sheet or proposal as well as Mr. Witten's response thereto escalated further when Mr. Witten refused to produce any communications with his clients purportedly due to the attorney-client privilege, notwithstanding that he was providing services as a "WHGC" entity and further notwithstanding that he was a full-time employee

5

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

of the firm through September 30th, and "of counsel" of the firm through October

6th.  *See* van Loben Sels Decl., para. 9.[1]  Nor would Mr. Witten agree to provide

any banking information or documentation without an immediate dismissal of the

lawsuit.  *See* van Loben Sels Decl., para. 11.

The above exchanges, which occurred within less than one month's time,

eventually led to the ultimate halting of any further discussions toward

settlement.  No further information or documentation was forwarded by Mr. Witten

as requested by WHGC. *See* van Loben Sels Decl., para. 12.

## III.   LEGAL ARGUMENT

### A. Standard For This Motion

"It is well settled that a district court has the equitable power to enforce

summarily an agreement to settle a case pending before it."  *Callie v. Near*, 829

F.2d 888, 890 (9th Cir 1987).   However, "[t]o be enforceable, a settlement must

meet two requirements.  First, it must be a completed agreement. (cite omitted).

Second both parties must have either agreed to the terms of the settlement or

authorized their respective counsel to settle the dispute. (cite omitted). *Wallis v.*

*Centennial Ins. Co., Inc.*, 2010 WL 2640247 at *1 (E.D.Cal. 2010).  A "complete"

agreement "is one where the parties have manifested their mutual assent to all the

material terms." *Banc of America Strategic Solutions, Inc. v. Mohamed*, 2008 WL

2756602 at *2 (S.D.Cal. 2008)(*citing Callie*, *supra*, at 890 (9th Cir. 1987).

Next, while California has a strong policy in favor of enforcing settlement

agreements, such agreements or attempted agreements "must be interpreted as to

give effect to the mutual intention of the parties as it existed at the time of

contracting." *Roden v. Bergen Brunswig Corp.*, 107 Cal. App. 4th 620, 625

(2003); CAL. CIV. P. SECTION 1636; *In re Western Asbestos Co.*, 416 B.R. 670

(N.D.Cal. 2009)("The goal of contract interpretation is to give effect to the mutual

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

intent of the parties at the time of contracting.")).  In interpreting contracts, the primary search is *for a common meaning of the parties*; the object of interpretation in the general law of contracts is to carry out the understanding of the parties rather than to impose obligations on them contrary to their understanding. (cite omitted)."  *Western Asbestos*, *supra*, at 694. "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." *Id.* at 694 (*citing Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1814 (1994); *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,* 43 Cal. 4th 375, 393 (2008)[1].[2]  Indeed, "[e]ven if a contract appears unambiguous on its face, a latent ambiguity may be exposed by extrinsic evidence which reveals more than one application to material facts." *Western Asbestos*, *supra*, 416 B.R. at 695.  "The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable." *Walker v. Gomez*, 609 F. Supp.2d 1149, 1154 (S.D.Cal. 2009).

---

[1] In *Genentech*, *supra*, the court explained as follows: "A party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean.  For this reason, evidence of such conduct … is admissible to resolve ambiguities in the contract's language. (cite omitted)." *Id.* at 393).

[2] *See also Trident Center v. Connecticut General Life Ins. Co.,* 847 F.2d 564, 569 (9th Cir. 1998) (citing *Pacific Gas*, 69 Cal. 2d 33, 38 – 39)("[I]t matters not how clearly a contract is written, nor how completely it is integrated, nor how carefully it is negotiated, nor how squarely it addresses the issue before the court: the contract cannot be rendered impervious to attack by parol evidence. If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity.").

7

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1     Finally, to the extent that the relief sought by way of enforcement of an

2  alleged settlement agreement is dismissal of the lawsuit, the district courts have

3  treated the motion as a motion for summary judgment.  Accordingly, where there

4  is any genuine issue of material fact regarding the alleged settlement agreement's

5  existence or enforceability as in the case at hand, such a motion to enforce a

6  settlement agreement should be summarily denied.  *Nite & Day Power*

7  *Technologies v. Corporate Capital Resources, Inc.*, 1995 WL 7942 at *3

8  (N.D.Cal. 1995) ("Although defendants do not label their motion to enforce the

9  Settlement Agreement as one for summary judgment, the standards should

10  nonetheless apply.  Because there is a genuine issue of material fact regarding the

11  Agreement's enforceability, defendants are not entitled to dismissal of the …

12  complaint. (cite omitted).").[3]

13     **B. The October 15 Email Was A Term Sheet or Agreement to Agree**

14     It is not uncommon during litigation negotiations for the parties to

15  memorialize rapid exchanges of position and document the material terms at each

16  stage of their negotiations in the form of term sheets or agreements to agree.  Such

17  documents are unenforceable in and of themselves, but function to move the

18  parties forward in their settlement discussions toward a hopeful ultimate

19  resolution.  The October 15th email, particularly when considered within the

20  context of the parties' ongoing discussions, was an unenforceable term sheet or

21  proposed agreement to agree.  *Hamilton v. Willms*, 2007 WL 707518 at *10

22  (E.D.Cal. 2007)(construing California law, "[A]n agreement to make an

23

24

25  [3] The Court should note that this is unlike the cases in numerous published opinions where the
alleged settlement agreement at issue was reached in the presence of either the judge or
26  magistrate, which provided those courts with an additional indicia of reliability to enable a
summary disposition as to a construction of terms and/or enforcement thereof.  *See, e.g.*,
27  *Hermetic Order of the Golden Dawn, Inc. v. Griffin*, 2008 WL 223403 at *1 (N.D.Cal. 2008);
*Doi v. Halekulani Corp.*, 276 F.3d 1131, 1134 (9th Cir. 2002).

28

8

**PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

agreement, without more, is not a binding contract.".[4]  In the context of the parties' ongoing discussions, the half-page October 15th email cannot be reasonably interpreted as an offer such that Witten's mere delivery of information and documentation would in itself lead to a **guaranteed** dismissal of WHGC's claims.  Indeed, the email could only be reasonably construed as a term sheet and/or proposal for an agreement to agree (*i.e.*, an invitation to acknowledge certain baseline terms for future settlement).

Given the nature of Mr. Witten's alleged conduct while a full-time WHGC employee, WHGC's October 15th email provided Mr. Witten with a "full and final" list of required disclosures and production that would serve as a prerequisite to any possible future settlement agreement.  Indeed, WHGC requested this information for the specific purpose of not only investigating the nature and extent of Witten's accused conduct, but also ascertaining WHGC's potential exposure to any possible malpractice claims that could arise out of Witten's unauthorized and undisclosed practice.  Cauley Decl., para. 5.  The basic future terms of dismissal, indemnity, and confidentiality were also included, demonstrating that the intent of the parties was a mutual interest in moving toward a possible settlement of the lawsuit, contingent upon Mr. Witten's performance of the base line terms which included that he would "certify full disclosure of all clients for whom he provided services in the UK and … provide copies of all documents associated with such representation." Cauley Decl., para. 7.  Without a threshold acknowledgement by Mr. Witten of what would be required of him before WHGC could consider

---

[4] *See also Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213 (2006)("Because essential terms were only sketched out, with their final form to be agreed upon in the future …, the parties had at best an 'agreement to agree,' which is unenforceable under California law"); *Beck v. Am. Health Group Int'l, Inc.*, 211 Cal. App. 3d 1555, 1563 (1989)("the letter did not constitute a binding contract, but was merely 'an agreement to agree' which cannot be made the basis of a cause of action").

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

dismissal of the lawsuit, no further settlement discussions would have been possible.  Cauley Decl., para. 5.

That the October 15th email was a term sheet is evidence by the lack of any detail whatsoever as to the material terms of any final settlement agreement. Specifically, there was no mechanism or timeline provided under which WHGC would be afforded an opportunity to review the information provided by Witten and to make a final determination as to the full scope of settlement that would be appropriate based on such review.  Cauley Decl., para. 8.

Accordingly, while Mr. Witten's ostensibly "accepted" the proposal as a final "settlement offer," such "acceptance" could operate as nothing more than an acknowledgement of his willingness to comply with the base terms outlined in the October 15th email so that settlement discussions could follow.  Nor did WHGC take Mr. Witten's "acceptance" as anything more.  At such an early stage of litigation, where Mr. Witten had not yet filed any responsive pleading and where neither party has conducted any discovery, Mr. Witten's construction of the curt October 15th email as an offer for immediate and unqualified dismissal of the lawsuit would lead to an "extraordinary, harsh, unjust, [and] inequitable" consequences that could not have been mutually contemplated by the parties. *Walker*, *supra*, 609 F. Supp.2d at 1154.

Accordingly, because WHGC's October 15th email and Mr. Witten's subsequent October 20th email response thereto functioned as an agreement to agree, it is unenforceable as a "settlement agreement" either summarily, or otherwise.  Under similar circumstances, the court in *Wallis v. Centennial Ins. Co., Inc.,* 2010 WL 2640247 (E.D.Cal. 2010) explained, in pertinent part, as follows:

First, the court cannot conclude with any degree of certainty that the handwritten … document was intended to be a completed agreement.  The

10

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

parties clearly anticipated that it would be reduced to a more formal agreement at a later date.  It could thus be interpreted as more of an agreement to agree, and the language to the effect that it is binding on all parties could be construed to mean that the agreement to agree was binding on all parties.  Second, the parties now dispute what the terms of the agreement were to be…. This court was neither a party to the so-called settlement agreement nor did this court approve it.  The whole concept of a settlement is that it is a voluntary agreement between the parties to resolve a lawsuit on mutually acceptable terms.  That concept is defeated when the court imposes terms on one of the parties which that party did not intend to accept.  Here, it appears that the parties never had a meeting of the minds. If they cannot agree on what their purported settlement covered then they do not have a settlement agreement.

Id. at *1.[5]

## C. The Terms Of October 15th Email Are Incomplete, Uncertain, and Unenforceable

Although the October 15th email should be construed as an agreement to agree as argued above, to the extent that it could be viewed as an "offer" subject to an acceptance by Mr. Witten, the terms of such offer were inherently incomplete and render the document unenforceable.  *Wallis*, *supra*, 210 WL 2640247 at *1.  Indeed, "[i]f no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred." *Weddington Prods., Inc. v. Flick*, 60 Cal.App.4th 793, 797 (1998). This fundamental rule applies to contracts for the settlement of litigation just as it does to all contracts.  *Terry v. Conlan*, 131 Cal.App.4th 1445, 1458 (2005).  It is not enough that the parties subjectively intended to be bound by the contract, or

---

[5] In *Wallis*, *supra*, court denying motion to enforce settlement a handwritten document purporting to set forth the terms of a settlement but containing a provision stating that the release to be reduced to a formal written release to be executed by all parties, but also stating that the agreement was nevertheless binding on all parties irrespective of the execution of a formal agreement.

11

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

even that the contract recites that the parties intend to be bound; rather, to be enforceable, a settlement agreement must specify all material terms, just as any contract must.  *Callie*, *supra*, 829 F.2d at 891 ("In addition to the intent of the parties to bind themselves, the formation of a settlement contract requires agreement on its material terms").

The understanding of the parties was that Mr. Witten's provision of information and documentation was subject to WHGC's review and assessment thereof.  In fact, without such terms, the very purpose of the term requiring documentation from Defendants in the first place would be eviscerated (i.e. to put WHGC in position to make an informed decision as to the final settlement).  *Rivers v. Beadle*, 183 Cal.App.2d 691, 698 (1960)("In determining the sufficiency of the subject matter of the contract, the purpose of the contract must be borne in mind."); *Beck v. American Health Group Int'l, Inc.,* 211 Cal.App.3d 1555, 1562 (1989) (Whether further future assent is required depends upon the objective intent of the parties, as demonstrated by their words and conduct); *In re Pago Pago Air Crash*, 637 F.2d 704, 706 (9th Cir. 1981)).[6]

Indeed, no time frame was provided for such dismissal since WHGC was yet unaware of the scope of additional documentation remaining to be produced by Witten and to be reviewed and assessed by WHGC.  Cauley Decl., para. 8.

---

[6] *See also* RESTATEMENT 2ND, CONTRACTS, SECTION 33: "(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain; (2) The terms of a contract area reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy; (3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."  *See also Terry v. Conlan*, 131 Cal.App.4th 1445, 1445 (2005)(parties' failure to agree on means of performing purported settlement regarding competing trust instruments prevented formation of enforceable contract); *Lindsay v. Lewandowski,* 139 Cal. App.4th 1618, 1622 (Court ruling that alleged settlement agreement was unenforceable, because parties never agreed on procedure to resolve payment dispute still in controversy).

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Settlement of an entire lawsuit based on serious alleged breaches of fiduciary duty, conversion, and fraud by a former employee could not occur without WHGC's review and assessment of Mr. Witten's full disclosure and production; mere production of information and documents by Mr. Witten without such necessary review could never have been reasonably contemplated by the parties, since such an agreement would have enabled Mr. Witten to avoid liability from further acts as yet unknown to WHGC  Cauley Decl., para. 8.

Moreover, there was no mechanism as to an acceptable method by which Witten could "certify" his full disclosure of all clients for whom he provided services in the UK; nor did it detail the scope of required indemnity by Mr. Witten, given that he performed certain legal services on behalf of WHCG with WHGC's knowledge that *were* authorized; nor did it exclude WHGC's possible right to additional monies from Witten based upon its further investigation; nor did it provide any details of the mutual release to be executed in the future by the parties at a yet undetermined time; nor did it discuss the details of the mutually acceptable press release to be determined at a later time.  *Lindsay v. Lewandowski*, 139 Cal. App. 4th 1618, 1622 (2006) (*citing Weddington*, *supra*, 60 Cal. App. 4th at 811) ("A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain.").[7]  In sum, the brief October 15th email did not contain all material terms in sufficient detail to possibly constitute a "completed agreement" with respect to a dismissal of the lawsuit with prejudice.

Under similar facts, the district court for the Eastern District of California in *Kelley v. Euromarket Designs, Inc.,* 2008 WL 109332 (E.D.Cal. 2008) denied the

---

[7] See also *Inamed Corp. v. Kuzmak*, 275 F.Supp.2d 1100, 1125 (C.D.Cal. 2002)("There is no doubt that release provisions are generally thought to be material terms of any settlement agreement.").

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

defendants' summary enforcement of an alleged settlement agreement.  In *Kelley*, the parties initiated settlement negotiations shortly after the commencement of the lawsuit, eventually reaching a preliminary agreement for settlement.  Following an email confirming "[w]e have a deal" by plaintiff and confirming that a draft settlement agreement would be drafted and forwarded to defendant, plaintiff thereafter sent an e-mail requesting certain information including defendants' remaining inventory of allegedly infringing materials.  *Id.* at *1.  Nearly a month later, defendants' counsel sent to plaintiff's counsel inquiring into the status of settlement negotiations "and expressing his belief that the parties had already reached an agreement."  *Id.* at *2.  Plaintiff's counsel responded advising that she and her client had reviewed the information forwarded by defendants, and that plaintiff remained open to discussing a reasonable settlement; defendant's counsel expressed their willingness to continue discussions "though [defendant] believed that the parties had already reached an agreement."  *Id.* A further offer was made by defendant several months later which was rejected by plaintiff.  *Id.* Defendant then filed an action to enforce the preliminary agreement several months earlier when the parties first confirmed that "we have a deal."  *Id.* Among other things, plaintiff explained in her declaration that she never agreed to settle the case "until all the final terms were reduced to writing, after [defendant] provided an accurate sales and inventory accounting."  *Id.* at *4.  The court agreed that "summary enforcement of the alleged settlement agreement [was] inappropriate."  *Id.*

**D. Mr. Witten's "Acceptance" Rejected The October 15th Email.**

It is well-settled that "[a]n acceptance to result in the formation of a binding contract must meet exactly and precisely the terms proposed in the offer, and if something different is made a condition of the alleged acceptance, no contract arises unless the original offeror accepts the counter offer." *Bartone v. Taylor-Benson-Jones Co.,* 119 Cal.App.2d 79, 81 (1953) (no acceptance of offer for

14

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS

purchase of realty where plaintiff attempted to add condition that the present owner retain oil rights in addition to surface rights.).  Thus, even if the October 15th email could be construed as an "offer" of settlement of the lawsuit – and it cannot – and even if the terms were sufficiently certain within the context of the parties' ongoing communications to be enforceable, Mr. Witten's ostensible "acceptance" went fundamentally beyond the scope of those terms and thus constituted a counteroffer which WHGC has never accepted.

As Mr. Witten's October 20th email makes plain, his "acceptance" was conditioned upon an immediate and guaranteed dismissal of the lawsuit – an additional term that was not contemplated at the time of this exchange of emails. Such a qualified acceptance is a new proposal because it proposed a substituted bargain – the immediate, unconditional dismissal of the lawsuit that was contingent upon WHGC's receipt and review of the information and documents requested by WHGC in its October 15th email.  CAL. CODE CIV. P. SECTION 1585; *Pago*, *supra*, 637 F.2d 704, 706.  Such a counteroffer has the same effect as a rejection of the original offer, and terminates the offeree's power of acceptance. RESTATEMENT 2ND, CONTRACTS, SECTION 39. *Niles v. Hancock*, 140 C. 157, 161 (1903); *Hayward Lumber & Inv. Co. v. Construction Products Corp*, 117 C.A.2d 221, 227 (1953); *Landberg v. Landberg*, 24 C.A.3d 742, 752, 757 (1972).

## IV.   CONCLUSION

For all the foregoing reasons, WHGC respectfully requests that the Court deny the motion in all respects.

Respectfully submitted,

Dated: January 3, 2011           WANG HARTMANN GIBBS & CAULEY, PLC


By:   /s/ Richard F. Cauley
      Richard F. Cauley
      Attorneys for Plaintiff

15

PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

        I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action. My business address is 1301 Dove Street, Suite 1050, Newport Beach, CA 92660.

        On **January 3, 2011** I served the foregoing document described as:

        **PLAINTIFF WANG, HARTMANN, GIBBS & CAULEY, PLC'S OPPOSITION TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

on the interested party(ies) in this action by placing a true and correct copy thereof enclosed in a sealed envelope address as follows:

PLEASE SEE ATTACHED SERVICE LIST

**X**   BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence of mailing.  Under that practice it would be deposited with U.S. postal serve on that same day with postage thereon fully prepaid at Orange County, California in the ordinary course of business.  I am aware that in motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   BY PERSONAL SERVICE: I delivered such envelope by hand to the offices of the addressee as indicated on the attached service list.

☐   BY FACSIMILE: I caused such documents to be communicated via facsimile to the addressee as indicated on the attached service list.

☐   BY FEDERAL EXPRESS: I caused said document(s) to be sent via Federal Express to the addressee as indicated on the attached service list.

**X**   BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I transmitted the document(s) electronically to the person(s) at the email address(es) listed on the attached service list. The transmission was reported as complete and without error.

Executed **January 3, 2011** at Newport Beach, California.

☐   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

**X**   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose discretion the service was made.

Faiza Anwar

1

## PROOF OF SERVICE LIST

2

3

Jason B. Witten
**Witten Law, Ltd**
Atrium Court

4

Suite 332B
The Ring

5

Bracknell RG12 1BW
England

6

j.witten@wittenltd.com

7

8

*Attorney for Jason Brian Witten, an individual and Wang, Hartmann, Gibbs & Cauley, Ltd., United Kingdom Private Limited Company*

9

4839-9262-4904, v. 1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28