**WANG HARTMANN GIBBS & CAULEY, PLC**
Richard F. Cauley (SBN: 109194)
RichardCauley@whgclaw.com
John D. van Loben Sels (SBN: 201354)
jvanlobensels@whgclaw.com
1301 Dove Street, Suite 1050
Newport Beach, California 92660
Telephone: (949) 833-8483
Facsimile: (949) 833-2281

Attorneys for Plaintiff
WANG HARTMANN GIBBS & CAULEY, PLC

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

| | |
|---|---|
| WANG HARTMANN GIBBS & CAULEY, PLC, a Corporation, | Case No.: SACV10-1499-JVS (MLGX) |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR:** |
| vs. | |
| JASON BRIAN WITTEN, an individual; and WITTEN LAW, LTD., F/K/A WANG, HARTMANN, GIBBS & CAULEY LTD., a United Kingdom Private Limited Company. | 1. **FEDERAL TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**<br>2. **FEDERAL FALSE DESIGNATION OF ORIGIN**<br>3. **FRAUD**<br>4. **CONVERSION/ EMBEZZLEMENT**<br>5. **INTERFERENCE WITH CONTRACT**<br>6. **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>7. **DEFAMATION**<br>8. **BREACH OF CONTRACT**<br>9. **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>10. **ACCOUNTING** |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

1

SECOND AMENDED COMPLAINT

1    Plaintiff, WANG, HARTMANN, GIBBS & CAULEY, PLC, a California

2    corporation, by and through its attorneys of record, alleges as follows:

3

4                                  **PARTIES**

5       1.    Plaintiff, WANG, HARTMANN, GIBBS & CAULEY, PLC

6    ("WHGC") is and at all times herein mentioned, a corporation organized and

7    existing under the laws of the state of California, with its principal place of

8    business located in Newport Beach, California.

9       2.    WHGC is informed and believes that at all times relevant hereto,

10   Defendant JASON BRIAN WITTEN (hereinafter "Witten") is and at all times

11   herein mentioned, an individual formerly employed by WHGC, California and

12   currently residing in the City of London, England.

13      3.    WHGC is informed and believes that at all times relevant hereto,

14   Defendant WITTEN LAW, LTD., formerly known as WANG, HARTMANN,

15   GIBBS & CAULEY LTD. (hereinafter "WHGC LTD") is and at all times herein

16   mentioned, was limited company organized and registered under the laws of the

17   United Kingdom, with its principal place of business at Blackwell House,

18   Guildhall Yard, London EC2v 5AE.  WHGC is further informed and believes that

19   WHGC LTD was formed by Witten and registered in the United Kingdom as

20   Defendant WHGC LTD in about April 2010, immediately after Witten had moved

21   to the United Kingdom.

22      4.    WHGC is informed and believes, and based thereon alleges, that at

23   all times relevant herein, each of the Defendants named herein was the principal,

24   agent, servant, joint venturer and/or employee of the other Defendants; and in

25   doing the things alleged herein, was acting within the course and scope of such

26   agency, joint venture and/or employment with the advance knowledge,

27   permission, consent and/or acquiescence, or subsequent ratification of each and

28   every remaining Defendant.  WHGC is further informed and believes, and based

                                       2
                           SECOND AMENDED COMPLAINT

thereon alleges, that at all times relevant each of the Defendants named herein is or was responsible and liable in some manner for acts, omissions and damages as alleged herein.

5.     WHGC is informed and believes, and based thereon alleges, that at all times relevant herein, Defendant Witten was merely the alter ego of Defendant WHGC LTD.  WHGC is informed and believes, and based thereon alleges, that at all times relevant herein there was such a unity of interest between Defendant Witten and WHGC LTD, that the separate personality of Defendant WHGC LTD did not in reality exist.  WHGC is informed and believes that Witten has attempted to utilize the alleged corporate "veil" of Defendant WHGC LTD to perpetrate a fraud, circumvent contractual obligations, and/or to accomplish other wrongful and/or inequitable purposes.  On information and belief, those wrongful and/or inequitable purposes were accomplished by, among other things, commingling funds and other assets, Defendant WHGC LTD's wholly inadequate capitalization as compared with its business operations and the risk of loss attendant thereto, and Witten's disregard of corporation formalities relative to Defendant WHGC LTD.

## JURISDICTION AND VENUE

6.     This claim has been brought for violation of the section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). This court accordingly has original subject matter jurisdiction pursuant to the provisions of 28 U.S.C. section 1331, 1338 and 15 U.S.C. 1121(a).

7.     In addition, this Court has subject matter jurisdiction over this matter based upon diversity jurisdiction, pursuant to 28 U.S.C. Section 1332.

8.     This Court further has supplemental jurisdiction over WHGC's State Law actions under 28 U.S.C. Section 1367(a).  It is appropriate for this Court to exercise supplemental jurisdiction over these claims, which are so directly related to the Lanham Act claims in which this Court has original jurisdiction, that they

3

1  form a part of the same case or controversy under Article III of the United States
2  Constitution.

3      9.    This Court has personal jurisdiction over the Defendants as the
4  Defendants regularly conduct business in this District and a substantial part of the
5  events or omissions giving rise to the Plaintiff's claims against the Defendants
6  occurred in this District.

7      10.    Venue is proper under 28 U.S.C. section 1391(b)(2) since a
8  substantial part of the events giving rise to the claims occurred in this district, and
9  Defendants conduct business in California.

10  **ALLEGATIONS IN SUPPORT OF ALL CAUSES OF ACTION**

11      11.    WHGC is a professional law corporation that has provided
12  professional legal services to clients both in the United States and overseas since
13  at least 1999.

14      12.    Witten had been, and was an employee of WHGC since the inception
15  of the company.  Witten began his long career with the firm first as a law clerk,
16  and has been employed on a full-time basis by WHGC as an associate attorney
17  ever since being admitted to the California State Bar in the year 2002.  Due to his
18  long-time work and service to WHGC, Witten was a full time employee that was
19  eventually entrusted by WHGC with many management-related duties of the firm,
20  and was relied upon for his continued work and advisement for WHGC in the
21  firm's continued growth and expansion.  During his employment with the firm,
22  and to facilitate the performance of duties on behalf of the firm, Witten was
23  entrusted by WHGC with the company's intimate details including clientele,
24  financial information, and internal management and external business strategies.
25  Witten's scope of duties and responsibilities with WHGC included, but were not
26  limited to obtaining and maintaining clients for WHGC, supervising and directing
27  the work and activities of associates at WHGC, providing opinions and analyses
28  for WHGC related to its internal financial and legal affairs, negotiating contracts

4

1  with WHGC's vendors and suppliers, and serving as the "face" of the firm in both
2  domestic and international sales "pitches."

3       13.    Indeed, not only was Witten entrusted with the care and
4  responsibility for the firm's clients and their private information, he was entrusted
5  with access to WHGC's books, records, and computer files and information
6  encompassing, without limitation, WHGC's billing structures and information, the
7  historical financial information of WHGC, the tax and compensation records of
8  the shareholders, attorneys, and staff of WHGC.

9       14.    In carrying out these responsibilities and being entrusted with such
10  information, WHGC relied upon Witten's continued loyalty and dedication to the
11  firm and trusted that Witten would not use his relationship with WHGC and the
12  information for his sole personal benefit and/or in a manner that would otherwise
13  injure WHGC. Indeed, this relationship between WHGC and Witten grew over
14  the course of many years into one that was fiduciary in nature.

15       15.    In about the year 2009, Witten began to suggest to WHGC that it
16  should expand and facilitate its services to potential clients in Europe by setting
17  up an affiliate office in London, England. Witten further volunteered that he be
18  the individual principally responsible in assisting WHGC to set up and manage the
19  affiliate office.

20       16.    Eventually, based upon the trust and confidence that WHGC had in
21  Witten's abilities and loyalty to the firm, WHGC agreed to allow Witten a limited
22  amount of time to set up an office in London to test the viability and profitability
23  of having such an office in that location to expand WHGC's business, and
24  permitting Witten to use WHGC trademarked name and likeness in connection
25  with Witten's endeavor for WHGC's benefit.

26       17.    Witten left for the United Kingdom in March 2010 to set up
27  WHGC's London office using WHGC's trademarked name, and WHGC is
28  informed and believes that Witten has resided in England since that time.

1      18.    The agreement between WHGC and Witten required that, while
2   Witten was operating an affiliate office in the United Kingdom, Witten remained a
3   full-time employee of WHGC, with full salary and benefits including a 401K
4   retirement savings plan, health insurance, and the duty to submit timesheets on a
5   monthly basis.  Furthermore, WHGC agreed to continue to provide Witten with
6   coverage under its legal malpractice insurance policy for legal services provided
7   on behalf of WHGC.  Moreover, as a full-time employee of WHGC, all clients for
8   whom Witten performed legal services were WHGC's clients.

9      19.    Furthermore, while Witten conducted his affiliate business on behalf
10   of WHGC, administration and accounting matters were to remain centrally-based
11   in, and directed from, WHGC's headquarters located in Newport Beach,
12   California.  For example, WHGC would continue to support Witten by making
13   available to him the firm's research resources, computer, email account, cellular
14   phone, attorneys, and staff in connection with his work on behalf of WHGC.
15   Concomitantly, all clients for whom Witten provided services from offices in
16   London, England were to be reported by Witten directly to WHGC, all invoices
17   for legal services to those clients were to be prepared and issued to clients by
18   WHGC's Newport Beach accounting department.  Moreover, Witten was required
19   to continue to submit monthly timesheets to WHGC at its Newport Beach office.

20      20.    Since he left for the United Kingdom in March 2010, Witten
21   appeared to be performing legal services from offices in London on behalf of, and
22   in the interest of WHGC, in the same manner as he had done for the past 12 years
23   – as a full time employee.  However, due to Witten's inability to generate
24   sufficient clientele and income for WHGC through the London-based office, the
25   decision was made by WHGC in September 2010 to close the London office and
26   to request that Witten return to the United States.  When WHGC requested that he
27   do so, Witten refused to comply.

28      21.    While disappointed with Witten's refusal to return to the United

1   States in September, WHGC agreed with Witten on or about September 22, 2010,
2   to allow Witten to continue his affiliation with WHGC on the condition that his
3   status be reduced from full-time employment to "of counsel" status, under which
4   he would be paid based on an hourly-rate rather than a full-time salary.  This
5   status was to become effective October 1, 2010.

6       22.    Immediately after the parties had negotiated Witten's new "of
7   counsel" employment, however, WHGC was shocked to discover that Witten had
8   been conducting himself in a manner that was in contravention of the parties'
9   understanding, and had instead been engaging in activities for his own personal
10  benefit and to the direct injury of WHGC – an employer with whom Witten had
11  shared a long-standing relationship based on loyalty, trust, and confidence as
12  described above.

13      23.    Specifically, while Witten appeared to report his time billed to
14  WHGC's clients on a monthly-basis, it was discovered by WHGC that he had in
15  fact been providing unreported services to certain of WHGC's clients and billing
16  them separately without WHGC's knowledge, consent, or authority.

17      24.    On October 1, 2010, WHGC was surprised to discover an email sent
18  by Witten on that date to one of WHGC's long-standing clients identified herein
19  as client "TI," which attached an invoice dated October 1, 2010, billing the client
20  for services rendered throughout the month of September, 2010.[1]  In fact, the
21  invoice was issued by Witten for these legal services to said client without
22  reporting those services to WHGC and therefore without WHGC's knowledge or
23  authority.  The invoice further indicated that Witten had also received payment
24  from the client for services provided the previous month in August, 2010.

25

26  [1] In order to protect the privacy and anonymity of the clients referenced in this Second Amended
    Complaint, Plaintiff has used 2-letter acronyms in lieu of the actual names of the clients. The
27  specific identity of these clients will be disclosed in confidence in discovery or as otherwise
    requested by the Court during the course of these proceedings without waiver of these clients'
28  rights of privacy.

SECOND AMENDED COMPLAINT

1   Imprinted on the invoice was WHGC's registered trade name and logo.  WHGC

2   owns a valid and protectable trademark and logo, which has been federally

3   registered in the United States and abroad, a true and correct sampling of which is

4   attached hereto as Exhibit "A."  However, it was purportedly issued by a "Ltd."

5   rather than "P.L.C."  Furthermore, the email from Witten to which the invoice was

6   attached, listed WHGC's Newport Beach address as an additional business office

7   of WHGC LTD.  (A true and correct copy of the name and logo used by

8   Defendants is attached hereto as Exhibit "B."  A redacted copy of the invoice in

9   question is attached hereto as Exhibit "C.")

10      25.   After discovering this invoice to "T," WHGC immediately contacted

11   Witten by email on October 2, 2010 and demanded that he cease and desist his

12   conduct and that Witten was not authorized to use WHGC's name or

13   communicate with WHGC's clients without WHGC's prior approval.

14      26.   In response to WHGC's email, Witten admitted that he had been

15   providing services for "TI" since at least July 2010, and accused WHGC of

16   "trying to pull a UK firm client away" from Witten.

17      27.   WHGC is further informed and believes that separate bank accounts

18   in WHGC LTD's name located in the United Kingdom were set up by Defendants

19   into which clients were instructed by Defendants to pay Defendants directly and

20   without notice to WHGC.

21      28.   In sum, Defendants' business was secretly conducted to effectively

22   compete directly against Witten's own employer, using WHGC's trademarked

23   name and logo, WHGC's resources, and WHGC's goodwill.

24      29.   WHGC is further informed and believes that Witten concealed his

25   activities and transactions from WHGC, using unwitting WHGC staff members to

26   do so.  In fact, WHGC is further informed and believes that Witten deliberately

27   bypassed WHGC staff who were in charge of billing clients.

28

SECOND AMENDED COMPLAINT

# FIRST CAUSE OF ACTION

## (Trademark Infringement – 15 U.S.C. § 1114)

### (Against All Defendants)

30.   WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

31.   Based on information and belief, Defendants' conduct complained of herein constitutes Trademark Infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1114.

32.   WHGC owns a valid and protectable trademark and logo, which has been federally registered in the United States and abroad, a true and correct sampling of which is attached hereto as Exhibit "A."

33.   Defendants have used WHGC's trademark and logo as described above without the consent, knowledge, or authorization of WHGC, in a manner that has, and is likely to cause confusion among clients for legal services as to the source of those legal services.  Based on information and belief, not only were Defendants illicitly operating a separate business for Defendants' own profit motives, Defendants were further using WHGC's trademarks to negotiated with vendors, including without limitation, applying for and opening up bank accounts under the name "WHGC" and/or "Wang, Hartmann, Gibbs & Cauley" located in the United Kingdom without Plaintiff's knowledge.

34.   Based on information and belief, WHGC has been seriously and irreparably damaged by Defendants' unlawful conduct described herein, by using WHGC's registered trademark and logo to develop an independent business to the exclusion of WHGC, without the knowledge or consent of WHGC with respect to clients whose identity was concealed by Defendants at the time of the filing of this action.

35.   In fact, since the filing of the Original Complaint, Plaintiff has confirmed that Witten has failed to disclose the existence and identity of clients

9

1   for whom he had provided services for Defendants' sole benefit during the course

2   of his full-time employment with Plaintiff, other than to a client "SC" and a

3   second client, "TI" referenced above. Plaintiff is informed and believes that

4   Defendants' basis for nondisclosure of such accounts was Defendants' position

5   that they were, and are under no obligation to disclose the existence or identity of

6   clients for whom Defendants ostensibly provide legal services concerning

7   European law.

8        36.    In fact, Plaintiff has discovered since filing the Original Complaint

9   that Defendants, during the course of Witten's full-time employment with

10  Plaintiff, were marketing themselves and soliciting clients using WHGC's

11  trademarked name and logo, entering into business relationships with clients

12  "CU," "DS," "FF," "BH," "RG," "OT," "SW," and "BI" – the existence of which

13  was concealed from WHGC prior to the filing of this action.

14       37.    Furthermore, based upon Defendants' prior and/or continued

15  concealment of Defendants' clients during the course of Witten's full-time

16  employment with Plaintiff, Plaintiff believes that Defendants may have solicited

17  other undisclosed US-based and non-US based clients of which Plaintiff is

18  currently unaware without receiving discovery from Defendants.  For example,

19  Plaintiff is informed and believes that Defendants have used different email

20  accounts – accounts to which Plaintiff has no access – to communicate with

21  prospective clients during the course of Witten's full-time employment with

22  Plaintiff, in order to market their legal services using WHGC's trademarked name

23  and likeness and otherwise communicate with clients without WHGC's

24  knowledge.  WHGC is further informed and believes that such communications

25  were made with email accounts in order to conceal them from Plaintiff.

26       38.    Upon information and belief, and as a result of the acts of

27  Defendants, WHGC has suffered and will continue to suffer monetary damages in

28  an amount not yet determined.  Additionally, WHGC has incurred and will incur

SECOND AMENDED COMPLAINT

1   liability for costs and attorneys' fees.

2       39.    Upon information and belief, Defendants' conduct complained of

3   herein was intentional, malicious, and/or willful.

4       40.    By reason of the foregoing, Defendants are liable to Plaintiff for: (a)

5   an amount representing three times Plaintiff's damages or Defendants' illicit

6   profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment

7   interest pursuant to 15 U.S.C. § 1117.

8

9                       **SECOND CAUSE OF ACTION**

10           **(False Designation of Origin – 15 USC § 1125(a))**

11                      **(Against All Defendants)**

12       41.    WHGC incorporates by reference all allegations contained in all

13   preceding and subsequent paragraphs.

14       42.    In connection with Defendants' advertisement, promotion,

15   distribution, solicitations, offers, and provision of legal services, Defendants have

16   used in commerce WHGC's trademark and logo described above.  As described

17   hereinabove, Defendants purported to sell and provide legal services on behalf of

18   Plaintiff and with Plaintiff's authority and consent when in fact Defendants were

19   conducting a separate business without Plaintiff's authority, knowledge, or

20   consent.

21       43.    Based on information and belief, Defendants' conduct complained of

22   herein constitute acts of false designation of origin under Section 43(a) of the

23   Lanham Act, 15 U.S.C. Section 1125(a).

24       44.    In connection with Defendants' business, including without

25   limitation its advertisement, promotion, distribution, solicitations, offers, and

26   provision of legal services as described above, Defendants have affixed, applied

27   and/or otherwise used false designations of origin and/or false and/or misleading

28   descriptions and representations which tend falsely to describe the origin,

SECOND AMENDED COMPLAINT

1  sponsorship, association and/or approval by WHGC of the nature and manner of

2  the legal services sold by Defendants.

3      45.    As further described hereinabove, Witten failed to disclose even at

4  the time of filing the action the existence and identity of clients for whom he had

5  provided services for Defendants' sole benefit during the course of Witten's full-

6  time employment with Plaintiff, and have continued to fail to disclose clients with

7  whom they entered into business relationships using Plaintiff's trademarks, and

8  warrants further discovery into other undisclosed US-based and/or non-US based

9  clients of which Plaintiff is currently unaware without receiving discovery from

10  Defendants.

11      46.    Based on information and belief, Defendants have used WHGC's

12  trademarks as described above with full knowledge of the falsity and/or

13  misleading nature of such designations of origin, descriptions, and representations,

14  all to the detriment and harm to Plaintiff.  In fact, by concealing from Plaintiff the

15  fact that Defendants were soliciting clients for Defendants' sole benefit,

16  Defendants knew that the statements and representations being made to

17  prospective clients were untrue and/or misleading.

18      47.    Based on information and belief, Defendants' improper use of

19  WHGC's trademarks as described hereinabove constitutes false and/or misleading

20  descriptions and representations tending falsely or misleadingly describe or

21  represent Defendants and Defendants' services as being authorized, sponsored,

22  affiliated or associated with WHGC.

23      48.    Defendants have used WHGC's trademarks both in connection with

24  clients in the United and abroad.

25      49.    Based on information and belief, this conduct of Defendants as

26  described above was, and is likely to cause confusion among clients for legal

27  services as to the source and authority of those legal services, thereby depriving

28  WHGC of its valid trademark rights.

12

SECOND AMENDED COMPLAINT

50.     Based upon information and belief, Defendants, in using the WHGC trademarks in the unauthorized and concealed manner described above, has acted willfully and with full knowledge of WHGC's rights in its trademarks, and has used this false designation of origin and description in contravention of 15 USC § 1125(a).  The trademarks were used by Defendants to improperly appropriate to themselves the valuable trademark rights of WHGC.

51.     Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely and/or misleadingly described or represent Defendants' services as those of and authorized by Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).

52.     By reason of the foregoing, Defendants are liable to Plaintiff for: (a) an amount representing three times Plaintiff's damages or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## **THIRD CAUSE OF ACTION**

### **(Fraud)**

### **(Against All Defendants)**

53.     WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

54.     At all relevant times mentioned herein until at least September 30, 2010, Witten was a full-time employee of WHGC as described above. Furthermore, such relationship was a unique and intimate one in which Witten owed WHGC a fiduciary duty and duty of loyalty as described above.

55.     Witten made the promises referred to hereinabove and below to WHGC, which were important to the transactions described herein that permitted Witten to travel to the United Kingdom to use WHGC's trademarked name, logo and resources to expand WHGC's overseas business.

SECOND AMENDED COMPLAINT

56.   Defendants' concealment as to the scope of their conduct and identity of the clients serviced and/or solicited by them has continued since the filing of the original Complaint.  This includes Defendants' continued concealment of clients other than clients "TI" and "SC" previously concealed by Defendants from discovery by Plaintiff as explained hereinabove including, without limitation, "RG," "OT," and "BI."  Based upon such continued concealment of clients, Plaintiff believes that clients other than those referenced above remain actively concealed by Defendants as of the date of this Second Amended Complaint – the identities of whom will require further discovery and investigation in this action. Defendants have also continued to conceal the identity of bank accounts that were opened by Defendants using WHGC's trademarked name and logo.

57.   Based on information and belief, said representations were made by Defendants with knowledge of their falsity and/or materially misleading nature at the time that those representations were made, and Plaintiff was unaware of such falsity and/or materially misleading nature of those representations.

58.   Alternatively and/or additionally, based on information and belief, Witten intentionally failed to disclose to WHGC important facts that were known only to Witten, and/or disclosed some facts to WHGC but intentionally failed to disclose other important facts known only to Witten, making the disclosure deceptive, as described hereinabove.  Such facts that were fraudulently omitted included the facts that Witten, through his new entity WHGC LTD intended to use WHGC's trademarked name and logo for the purposes of taking WHGC's existing clients, seeking new clients for Witten's sole benefit to the unlawful and unfair exclusion of WHGC, and directly competing against WHGC for business.

59.   Based on information and belief, Witten also actively concealed these important facts from WHGC including those described above and/or prevented WHGC from discovering such facts.

60.   Witten also made certain promises to WHGC to abide by certain

14

SECOND AMENDED COMPLAINT

rules and restrictions set forth in the WHGC Employee Handbook when he signed the Employee Handbook without any intention to perform them when he made them. In particular, the WHGC Employee Handbook contains passages such as:

    •    Unauthorized use of disclosure of business "secrets" or Confidential Information belonging to Wang, Hartmann & Gibbs, PC, its employees or clients including but not limited to documents, forms, client lists, keys or equipment;

    •    Failure to adequately protect the Confidential Information of the Firm and its clients, including the proper handling and destruction of documents;

    •    Unauthorized possession, removal or use of Wang, Hartmann & Gibbs, PC property, information or funds;

    •    Insubordination or other disrespectful or uncooperative conduct;

    •    Unsatisfactory performance or conduct;

    •    Inappropriate disparagement of Wang, Hartmann & Gibbs, PC; and

As an employee of Wang, Hartmann & Gibbs, PC, you are expected to avoid any activity, transaction or investment that could be construed as a conflict of interest with Wang, Hartmann, & Gibbs, PC or its clients, including any behavior that gives the appearance of taking money, merchandise or services from a client or vendor for personal gain, or that interferes with your ability to be at work and perform the job dues expected of you. This policy also applies to second employment that may interfere with the employee's ability to be at work when required and perform the duties of the employee's position.

If you engage in any activity, transaction or investment that might cause a conflict between personal and Wang, Hartmann & Gibbs, PC interests, information about that potential conflict must be disclosed in writing to Elaine Wu or Jeffrey Wang.

SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Confidentiality**  As an employee of Wang, Hartmann & Gibbs, PC you will directly or indirectly gain access to information about Wang, Hartmann & Gibbs, PC, its operations and its clients that is absolutely confidential. This Confidential Information, includes, but is not limited to, all client information including contact information; personnel information including contact, wage and benefits information; vendor information including contact and pricing information; contracts between Wang, Hartmann & Gibbs, PC and any client, employee or vendor; the way in which we produce and market our services; referral and referral source information; our financial information and structure; our modes and methods of conducting business; all copyrighted and non-copyrighted or non-protected computer software programs; all work product created or produced by you on behalf of Wang, Hartmann & Gibbs, PC, and; all confidential and/or sensitive client information ("Confidential Information").

All Confidential Information is proprietary to Wang, Hartmann & Gibbs, PC. Employees shall keep all such Confidential Information in confidence, both during their employment and at all times thereafter. Unless required by law, or for a legitimate business purpose benefiting Wang, Hartmann & Gibbs, PC, Employee shall not disclose, directly or indirectly, any such Confidential Information to anyone outside Wang, Hartmann & Gibbs, PC without written permission from Jeffrey Wang or Elaine Wu. Accordingly, each employee will be supplied with a shredder.  Therefore, all paperwork containing Confidential Information must be either put into files or promptly shredded by each employee.

Upon termination of your employment for any reason, or at any other time upon request, you shall deliver promptly to Wang, Hartmann & Gibbs, PC all Confidential Information, as well as any and all property, material and documentation relating to Wang, Hartmann & Gibbs, PC, its operation and its clients, whether or not of a confidential nature, and you agree not to retain any document or data containing any Confidential Information upon the termination of your employment.

Upon termination of your employment for any reason, you must

SECOND AMENDED COMPLAINT

1   continue to treat as confidential and proprietary any Confidential
2   Information, including but not limited to the information described
    above, and may not use or release any Confidential Information
3   concerning Wang, Hartmann & Gibbs, PC to any person, firm or
4   institution without the express written approval of Elaine Wu or
    Jeffrey Wang.
5

6   Wang, Hartmann & Gibbs, PC ("the Firm") and Employee
7   acknowledge that Employee, in performing the terms and conditions
    of Employee's employment, will directly or indirectly access to
8   information about Wang, Hartmann & Gibbs, PC and its clients and
9   operations that is highly sensitive and confidential. This Confidential
10  information includes, but is not limited to, the Firm's modes and
    methods of conducting business, marketing its services, its client,
11  employee, customer, vendor and referral source lists, its trade secrets,
12  its copyrighted and non-copyrighted or non-protected computer
    software programs, its techniques of operation, its financial structure,
13  and its weaknesses, if any (hereinafter referred to as "Confidential
14  Information"). Further, the Confidential Information specifically
    includes client information obtained as a result of employee's
15  employment with Wang, Hartmann & Gibbs, PC.
16

17  Wang, Hartmann & Gibbs, PC and Employee acknowledge and agree
    that all Confidential Information shall be deemed to be highly
18  confidential, shall constitute the Company's trade secrets and shall
19  remain the sole property of the Company. Employee agrees not to in
    any way communicate, reveal or divulge any Confidential Information
20  to any person or entity not employed by the Company, without
21  advance, written approval of such communication from Jeffrey Wang
    or Elaine Wu. Accordingly, each employee will be supplied with a
22  shredder. Therefore, all paperwork containing Confidential
23  Information must be either put into files or promptly shredded by each
    employee.
24

25  Upon termination of employment with Wang, Hartmann & Gibbs, PC
26  for any reason, or at any other time the Firm demands, Employee shall
    deliver promptly to Wang, Hartmann & Gibbs, PC all material and
27  documentation relating to the Firm and its clients, including without
28  limitation all files, pleadings, memoranda, notes, records, reports,

17

SECOND AMENDED COMPLAINT

1   manuals, employee lists, customer lists, referral source lists, vendor
2   service lists, software, programs, and other documents, whether or not
    of a confidential nature, belonging to the Firm, including all copies of
3   such materials which Employee may then possess or have under
4   Employee's control. Employee further agrees that upon termination of
    employment Employee shall not retain any document or data of any
5   description containing or pertaining to the Confidential Information.

6
    Employee agrees that the terms of this Confidentiality provision shall
7   survive termination of Employee's employment.

8

9       61.    Based on information and belief, Witten maliciously and willfully

10  intended to deceive WHGC by concealing the facts above, including without

11  limitation those described above and below.  Witten also intended WHGC to rely

12  on Witten's promises in order to induce WHGC to continue paying Witten's

13  salary while Witten stole clients from WHGC and marketed business for himself

14  to the exclusion of WHGC and in direct competition with WHGC.

15      62.    WHGC reasonably relied on Witten's false promises and deception

16  and concealment.  Indeed, but for such omitted facts, WHGC would not have

17  continued to pay Witten's salary as a full-time employee while Witten engaged in

18  these unlawful and deceptive activities.

19      63.    Based on information and belief, WHGC LTD aided and abetted

20  Witten's deception by encouraging, facilitating, and assisting Witten in the

21  conduct described hereinabove.  Furthermore, Witten failed to perform the

22  promises to his long-time employer relating to setting up and operating a business

23  in the United Kingdom, using WHGC's trademarked name, logo, and resources to

24  expand WHGC's business and in a manner that would not cause injury to WHGC,

25  and Plaintiff's reliance on those promises was a substantial factor in causing harm

26  to Plaintiff.

27      64.    As a proximate result of Witten's conduct WHGC has been damaged

28  in an amount to be proven at trial. That Defendants' concealment was a substantial

1  factor in causing Plaintiff's harm.

2      65.    Based upon information and belief, in doing the acts alleged herein,

3  Defendants acted with oppression, fraud and/or malice within the meaning of

4  California Civil Code section 3294.  As such, Plaintiff is entitled to recover

5  punitive damages against Defendants in a sum sufficient to punish or otherwise to

6  set an example of their oppressive conduct herein.

7                          **FOURTH CAUSE OF ACTION**

8                          **(Conversion and Embezzlement)**

9                          **(Against All Defendants)**

10     66.    WHGC incorporates by reference all allegations contained in all

11 preceding and subsequent paragraphs.

12     67.    In the course of work done by defendants on behalf of WHGC or

13 representing themselves as performing legal services on behalf of WHGC,

14 Defendants collected monies which belonged to WHGC.  This included monies

15 from clients that remained undisclosed to Plaintiff at the time of filing this lawsuit,

16 including, without limitation, "RG," "OT," and "BI."  Plaintiff believes that

17 clients other than those referenced above remain actively concealed by Defendants

18 as of the date of this Second Amended Complaint – the identities of whom will

19 require further discovery and investigation in this action.

20     68.    Defendants fraudulently appropriated those funds.  Indeed, Witten

21 concealed the fact that he had collected such funds from WHGC and deposited

22 those funds in bank accounts set up by Defendants in the United Kingdom.

23     69.    Plaintiff has demanded, and continues to demand, the amounts due

24 and owing to Plaintiff.

25     70.    Witten has refused to return those funds to WHGC.

26     71.    Since the time of the demand, Defendants have not been in lawful

27 possession of Plaintiff's funds and have converted the same for their own use.

28

72.     As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages in an amount to be proven at trial

73.     Plaintiffs are informed and believe, and based thereon allege, that particularly in light of Defendants' continuing concealment as to the clients for whom they provided legal services during the course of Witten's full-time employment as described above,  Defendants acted with oppression, fraud and/or malice within the meaning of Civil Code Section 3294.  As such, Plaintiffs are entitled to recover punitive damages against Defendants in a sum sufficient to punish or otherwise to set an example of their despicable conduct herein.

## FIFTH CAUSE OF ACTION
## (INTERFERENCE WITH CONTRACT)
### (Against all Defendants)

74.     WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

75.     Plaintiff entered into contracts with certain clients wherein Plaintiff agreed to provide legal services, and under which Plaintiff performed its obligations under the contract by introducing a valuable investment opportunity to Defendants which was ultimately consummated.  These contracts were with clients including that identified as "AT."  Specifically with AT, for example, Plaintiff is informed and believes that Witten expressly informed AT that Plaintiff's counsel in China was Defendants' counsel, for the purpose of inducing AT to do business with Defendants in the United Kingdom rather than directly with Plaintiff.

76.     Based upon information and belief, Defendants, and each of them, had actual knowledge of the contracts with Plaintiff referenced above.

77.     Based upon information and belief, Defendants intentionally and/or negligently acted to cause a disruption in the performance of said contracts with Plaintiff.  Specifically, immediately after being notified that Witten would be

1   reduced from full-time to part-time "of counsel" status, but prior to the effective

2   date of the "of counsel" status on October 1, 2010, Defendants commenced

3   solicitation of clients with whom WHGC shared such contractual relationship

4   including a specific request to use Defendants' services rather than Plaintiff's.

5       78.    Defendants' conduct disrupted and harmed the contractual

6   relationship and/or otherwise caused its performance to be more difficult.

7       79.    There was no justification for their conduct.

8       80.    As a proximate result of said conduct, Plaintiff was damaged in an

9   amount to be proved at trial.

10      81.    The actions of Defendants herein were done with oppression, fraud

11  and/or malice.  As such, Plaintiff is entitled to recover punitive damages against

12  Defendants in a sum sufficient to punish or otherwise to set an example of their

13  despicable conduct herein.

14

15                       **SIXTH CAUSE OF ACTION**

16  **(INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**

17                         **(Against all Defendants)**

18      82.    WHGC incorporates by reference all allegations contained in all

19  preceding and subsequent paragraphs.

20      83.    Between about March 2010 through September 2010, business

21  relationships not necessarily evidenced by an enforceable contract existed between

22  Plaintiff and clients solicited by Defendants.

23      84.    Plaintiff is informed and believes, and based thereon alleges that

24  Defendants marketed their legal services, using WHGC's trademarked name and

25  logo, salary and resources received from WHGC as WHGC's full-time employee,

26  to various prospective clients located outside the United States for whom WHGC

27  had not previously provided services.

28

SECOND AMENDED COMPLAINT

85.     Notwithstanding that WHGC had not previously provided services to said clients, Plaintiff is informed and believes that any and all prospective clients with whom Defendants negotiated the provision of legal services during the course of Witten's full-time employment status were in fact WHGC's prospective clients. Plaintiff is further informed and believes that since Witten was acting as WHGC's ostensible agent for legal services in soliciting said clients, said clients constituted the prospective business relationships of WHGC. Moreover, Plaintiff is further informed and believes that Defendants' attempt to solicit and obtain business from such clients for their own sole benefit through the use of WHGC's trademark and resources during such full-time employment was unlawful.

86.     These relationships, where nurtured and developed by WHGC, constituted economic relationships that probably would have resulted in a future economic benefit to Plaintiff.

87.     In fact, Plaintiff has discovered since filing the Original Complaint that Defendants, during the course of Witten's full-time employment with Plaintiff, were marketing themselves and soliciting clients using WHGC's trademarked name and logo, entering into WHGC's prospective business relationships with clients "CU," "DS," "FF," "BH," "RG," "OT," "SW," and "BI" – the existence of which was concealed from WHGC prior to the filing of this action.  Furthermore, while Plaintiff is informed and believes that these clients in fact entered into contractual relationships with Defendants, other prospective opportunities, similarly undisclosed, may have been lost which could have led to probable business if continued to be developed and nurtured by Plaintiff.

88.     Furthermore as described above, due to Defendants' prior and/or continued concealment of Defendants' clients during the course of Witten's full-time employment with Plaintiff, Plaintiff believes that Defendants may have solicited other undisclosed US-based and non-US based clients of which Plaintiff is currently unaware without receiving discovery from Defendants.  For example,

SECOND AMENDED COMPLAINT

1 Plaintiff is informed and believes that Defendants have used different email
2 accounts – accounts to which Plaintiff has no access – to communicate with
3 prospective clients during the course of Witten's full-time employment with
4 Plaintiff, in order to market their legal services using WHGC's trademarked name
5 and likeness and otherwise communicate with clients without WHGC's
6 knowledge.
7   89.   Defendants intentionally and without justification interfered with
8 Plaintiffs' business relationship.
9   90.   Defendants, who under the circumstances described herein was an
10 actual and/or ostensible agent of WHGC, was attempting to develop these
11 economic relationships for WHGC's ostensible benefit, and who were concealing
12 these business negotiations from Plaintiff, knew of the existence of the prospective
13 economic benefits from those relationships to Plaintiff.
14   91.   Based on information and belief, Defendants in fact acted
15 intentionally and/or without reasonable care in disrupting and/or harming the
16 prospective economic relationships with said clients.
17   92.   The acts described herein were wrongful since they were conducted
18 by Defendants, *inter alia*, by using Plaintiff's trademarked name and logo, and
19 engaging in the further unlawful acts described hereinabove and below.
20   93.   The prospective relationships were in fact disrupted, harmed, and or
21 terminated.
22   94.   As a proximate result of Defendants' conduct described herein,
23 Plaintiff was damaged in an amount according to proof at trial.
24   95.   The actions of Defendants herein were done with oppression, fraud
25 and/or malice.  As such, Plaintiff is entitled to recover punitive damages against
26 Defendants in a sum sufficient to punish or otherwise to set an example of their
27 despicable conduct herein.
28

SECOND AMENDED COMPLAINT

## SEVENTH CAUSE OF ACTION

### (Defamation)

### (Against All Defendants)

96.    WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

97.    Based on information and belief, both during and after the period of Witten's full-time employment with Plaintiff, Defendants communicated with the existing and/or prospective clients referenced above without the knowledge of Plaintiff.

98.    Based on information and belief, those communications included false statements of fact that would be understood as being of and concerning Plaintiff and tending to harm Plaintiff's business reputation.   By way of example, Plaintiff alleges on information and belief that this included a statement to client "TI" referenced above suggesting that WHGC had issued a "fake" invoice to "TI." On information and belief, WHGC alleges that similar false and/or misleading statements reflecting negatively upon WHGC's character and reputation were made by Witten to "TI" and other existing or actual clients of Plaintiff.

99.    These statements were made either intentionally or were made without reasonable care to determine the truth or falsity of such statements, or otherwise were made in reckless disregard of their falsity and/or misleading nature.

100.    Upon information and belief, Plaintiff alleges that the defamatory statements referenced herein were made both orally and/or in writing, including, without limitation, from Defendants' separate email accounts to which Plaintiff has no access.

101.    As a proximate result of said acts of defamation, Plaintiff and its business has been generally and/or specially damaged and harmed in an amount

24

1 | according to proof at trial.

2

3 | **EIGHTH CAUSE OF ACTION**

4 | **(Breach of Contract)**

5 | **(Against Witten)**

6 | 102.   WHGC incorporates by reference all allegations contained in all

7 | preceding and subsequent paragraphs.

8 | 103.   In or about 2002, at the time that Witten became a licensed attorney,

9 | Witten entered into an oral employment contract with Plaintiff without a specified

10 | length of time, as described above.  The contract provided, *inter alia*, that Witten

11 | would be provided a salary and benefits in exchange for his full-time services as

12 | an attorney for Plaintiff.

13 | 104.   In connection with the underlying employment contract, Witten

14 | further agreed to the terms of the WHGC Employee Handbook referenced

15 | hereinabove in or about September 2007 – the terms of which became fully

16 | incorporated into his terms of employment.

17 | 105.   Further in connection with his employment contract and relationship

18 | with Plaintiff, Witten was permitted to use WHGC's trademarked name and

19 | likeness in exchange for Witten's promise to market and expand WHGC's

20 | business in the United Kingdom during the course of Witten's full-time

21 | employment with WHGC.

22 | 106.   Witten breached his contract with Plaintiff by engaging in acts

23 | encompassing, without limitation, insubordination and uncooperative conduct as

24 | described hereinabove, and engaging in numerous transactions constituting a

25 | conflict of interest with Plaintiff, his employer, including his taking of clients and

26 | money for his own personal gain without disclosure to Plaintiff.

27 | 107.   These breaches by Witten of his contract with Plaintiff has

28 | proximately resulted in damage and harm to Plaintiff in terms of Plaintiff's loss of

SECOND AMENDED COMPLAINT

prospective business opportunities and/or clients as described above, damage to its goodwill and its business, loss of the salary paid to Witten but which was unearned by Witten as a result of his breaches described herein.

## NINTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (Against Witten)

108.   WHGC incorporates by reference all allegations contained in all preceding and subsequent paragraphs.

109.   Witten entered into an employment contract with Plaintiff as described above, and was required to abide by the terms of his employment, including the provisions of the WHGC Employee Handbook described above.

110.   Further in connection with his employment contract and relationship with Plaintiff, Witten was permitted to use WHGC's trademarked name and likeness in exchange for Witten's promise to market and expand WHGC's business in the United Kingdom during the course of Witten's full-time employment with WHGC.

111.   Witten had an implied obligation to perform his agreement with Plaintiff as described herein in good faith and through fair dealing.   Such obligation included an obligation to refrain from engaging in any conduct that would unfairly impair the value of the contract to Plaintiff.

112.   By accepting his full-time salary from WHGC and then using it to run a secret business in competition with WHGC, including soliciting actual and/or prospective clients as described hereinabove, the value of the agreement to Plaintiff was substantially impaired.   Such clients included, without limitation, "RG," "OT," and "BI."

113.   Witten's conduct therefore constituted a breach of the implied covenant of good faith and fair dealing in that the actions constituted an

SECOND AMENDED COMPLAINT

1   intentional and/or reckless effort to prevent Plaintiff from obtaining its full
2   entitlement to the benefits of its agreements with Witten, for the self-interested
3   commercial goals of Defendants.

4   114.   As a proximate result of this breach by Witten, Plaintiff has been
5   damaged and harmed in terms of Plaintiff's loss of prospective business
6   opportunities and/or clients as described above, damage to its goodwill and its
7   business, loss of the salary paid to Witten but which was unearned by Witten as a
8   result of his breaches described herein.

9

10   **TENTH CAUSE OF ACTION**
11   **(Accounting)**
12   **(Against All Defendants)**

13   115.   WHGC incorporates by reference all allegations contained in all
14   preceding and subsequent paragraphs.

15   116.   As alleged hereinabove, Witten was a full-time employee of Plaintiff
16   through September 2010, and continued as Plaintiff's of counsel attorney until his
17   termination of employment on or about October 6, 2010. Furthermore, as
18   explained hereinabove, Defendants owed a fiduciary duty to Plaintiff.
19   Notwithstanding the special and long-time relationship between the parties,
20   Defendants concealed the existence and scope of their business as well the monies
21   derived from such business from Plaintiff such that an accounting is appropriate to
22   ascertain the accounts of Defendants and their business conducted from the United
23   Kingdom without knowledge of Plaintiff, particularly in connection with those
24   clients undisclosed prior to the institution of the lawsuit and whom have remain
25   concealed by Defendants including, without limitation, "RG," "OT," and "BI," as
26   well as all other that are currently unknown to Plaintiff and which must be
27   investigated through further discovery and investigation in this action.

28   117.   Plaintiff alleges on information and belief, for the reasons described

1   above, claim an interest in the monies unlawfully obtained by Defendants without
2   Plaintiff's knowledge.

3         118.   An accounting of all legal fee agreements entered into by Defendants
4   and payments received by Defendants is particularly appropriate due to the
5   unlawful manner in which monies were obtained by Defendants in connection
6   with their business as alleged hereinabove, and further in light of the manner in
7   which the undisclosed business derived by Defendants depended upon their use of
8   Plaintiff's trademark, logo, reputation, and resources.  Existence of the economic
9   relationships established at Plaintiff.

10        119.   Moreover, an accounting is appropriate to ascertain how much of
11  Witten's salary from Plaintiff was in fact invested into Witten's business in the
12  United Kingdom for the purpose of competing with Plaintiff for Plaintiff's
13  prospective clients.

14

15  WHEREFORE, WHGC, prays for judgment against the Defendants, and each of
16  them as follows:

17        1.    On all applicable causes of action, for general, special, consequential
18              and incidental damages;

19        2.    On all applicable of Causes Action, injunctive orders enjoining
20              Defendants from engaging in any concealed activities constituting
21              infringement of WHGC's trademark, breaches of Defendants'
22              fiduciary duties and/or loyalty owed to WHGC, and unfair business
23              practices and false advertising pursuant to Business and Professions
24              Code Sections 17200 et seq. and 17500, respectively, and
25              conversion/embezzlement, and for a full disgorgement of any and all
26              monies obtained by Defendants in connection with such conduct
27              including, without limitation, lost profits and salary obtained unfairly
28              and unlawfully by Witten;

28

SECOND AMENDED COMPLAINT

3.   On all applicable Causes of Action, punitive damages and/or exemplary treble damages.

4.   On all causes of action, for attorneys' fees and costs as allowed by contract, statute, or law; and

5.   On all causes of action, for such other and further relief as this Court deems just and proper.

Dated: March 25, 2011                    WANG HARTMANN GIBBS & CAULEY, PLC

                                 By:  _____
                                      John D. van Loben Sels
                                      Attorneys for Plaintiff
                                      WANG HARTMANN GIBBS & CAULEY

1

## DEMAND FOR JURY TRIAL

2    Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal

3  Rules of Civil Procedure.

4

5  Dated: March 25, 2011                 WANG HARTMANN GIBBS & CAULEY, PLC

6

7                                        By:

8                                            John D. van Loben Sels
                                             Attorneys for Plaintiff
9                                        WANG HARTMANN GIBBS & CAULEY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT





## INVOICE



**WANG, HARTMANN, GIBBS & CAULEY, LTD.**
Blackwell House, Guildhall Yard
London, EC2V 5AE
Tel. (0)20-3287-9500

Page 1 of 2

October 1, 2010

**Via Email Only**
Emailed to 



**Services for Current Month:**

| Date | Description | Time | Amount |
|------|-------------|------|--------|
| █ | ███████████████████ | 1.4 | █ |
| █ | ███████████████ | .4 | █ |
| █ | ███████████████ | 1.0 | █ |
| █ | ████████████ | .2 | █ |
| █ | █████████████████ | .3 | █ |
| | ██████████ | 2.1 | |
| █ | ███████████ | 1.9 | █ |
| | ████████ | .5 | |
| █ | █████████████ | .8 | █ |
| | ███████████ | .9 | |
| █ | ██████████████████ | 1.4 | █ |
| █ | █████████████████ | .5 | █ |
| | Total Courtesy Discounts* | 1.8 | -$720 |
| | **Total in $** | | $3,840.00 |
| | **Total in £ (.6288 £/$ on 9/30)** | | £2,414.59 |

**Payment History**

| Date | Description | Amount |
|------|-------------|--------|
| 8/31 | Amount Due from August | -£482.40 |
| 9/9 | Payment Received – Thank You | £449.61 |

██████████
September 30, 2010
Page 2 of 2

| | Courtesy Discount* - Currency Exchange | £32.79 |
|---|---|---|
| | Amount Due from September | -£2,414.59 |

**Amount Now Due:**     **£2,414.59**

Payments made after the statement date may not be reflected.

\* Courtesy discounts are not always offered.

Thank you for choosing WHGC to assist you with this matter. We look forward to your continued business. Should you wish to discuss this invoice, or any other matter, do not hesitate to contact us.

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF ORANGE

3

4          I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action. My business address is 1301 Dove Street, Suite 1050, Newport Beach, CA 92660.

5

6          On **March 25, 2011** I served the foregoing document described as:

7

**SECOND AMENDED COMPLAINT**

8

on the interested party(ies) in this action by placing a true and correct copy thereof enclosed in a sealed envelope address as follows:

9

10

### PLEASE SEE ATTACHED SERVICE LIST

11      **X**     BY MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence of mailing.  Under that practice it would be deposited with U.S. postal serve on that same day with postage thereon fully prepaid at Orange County, California in the ordinary course of business.  I am aware that in motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

12

13

14      ☐     BY PERSONAL SERVICE: I delivered such envelope by hand to the offices of the addressee as indicated on the attached service list.

15

16      ☐     BY FACSIMILE: I caused such documents to be communicated via facsimile to the addressee as indicated on the attached service list.

17

18      ☐     BY FEDERAL EXPRESS: I caused said document(s) to be sent via Federal Express to the addressee as indicated on the attached service list.

19

20      **X**     BY E-MAIL OR ELECTRONIC TRANSMISSION: Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I transmitted the document(s) electronically to the person(s) at the email address(es) listed on the attached service list. The transmission was reported as complete and without error.

21

22

23      Executed **March 25, 2011** at Newport Beach, California.

24      ☐     (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

25

26      **X**     (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose discretion the service was made.

27

28

                    Faiza Anwar

1

**PROOF OF SERVICE LIST**

2

3

Jason B. Witten
**Witten Law, Ltd**
Atrium Court

4

Suite 332B
The Ring

5

Bracknell RG12 1BW
England

6

j.witten@wittenltd.com

7

*Attorney for Jason Brian Witten, an individual and Witten Law, Ltd. f/k/a Wang, Hartmann,*

8

*Gibbs & Cauley, Ltd., United Kingdom Private Limited Company*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28